ceeds of the sale so applied? But not only the stock was sold, but the farming implements also, which seem to have been limited, as the sum for which they sold was set down at thirty dollars. The farm also was leased by the defendant for two years as above stated. These acts by him evinced a determination, as it would seem, rather to profit by the possession he had, than in good faith to carry out the contract. He was bound not to assign the indenture without the consent of Tibbatts and wife in writing. It is probable that the land was leased in consequence of the step taken by the complainant to get possession of the premises. In the lease for 1854 it is stated, that the rent was paid. This is rather an extraordinary circumstance, as it is not supposed to be usual to pay a money rent in advance.

In regard to the amount presented against the estate of John W. Tibbatts, which not only covers the proceeds of the sale of the stock, but leaves a large balance due to the defendant, it is singular that it was never presented to the administrator of Tibbatts, though public notice was given to all who had claims on the estate to present them for adjustment. Tibbatts had been dead some two or three years before this account seems to have been made out, and the administrator had no knowledge of it. It is proved, that Leo Tibbatts was some years in the service of his brother as clerk, at a thousand dollars a year, but it is hardly probable that he could have had no occasion to call for his salary during that time, for the support of himself and family. Some of the witnesses, well acquainted with the defendant at Newport, when these services were rendered, are under the impression, that the defendant was largely indebted to his brother. This account it seems was never known to the administrator of Tibbatts until the present emergency, which is a circumstance suggestive of doubts as to its validity. But however this may be, the question of law, arising on the facts is not affected by it. By selling the stock and leasing the ground, the defendant has not only disregarded the contract, but has disabled himself from carrying it into effect. The lessee of the defendant of course must receive compensation for his labor and care, so that the rent paid by him to the defendant, should be paid to the complainant. On what principle, under the facts, could the defendant claim a part of this rent? He was entitled to but one third of the profits and those or a greater proportion, are paid to Watson, who has been substituted by the defendant for himself. If the husband consented to the sale of the stock, it was to the prejudice of his wife; and after his decease, the contract having been materially altered, she was under no obligation to continue it. To make the farm a stock farm, as it was when the defendant entered into the possession of it, a large outlay would be required, which the complainant may not be able to afford, and

which is foreign to the contract and to the understanding of the parties.

Under the circumstances, I think the defendant has utterly disregarded the contract and abandoned it, and the proposal to give security cannot avail him, as he has forfeited the confidence of the complainant by an entire disregard of the obligations of the contract, and of her interests in particular. If the contract constituted a partnership, the death of John W. Tibbatts dissolved it; and if the contract be considered a lease, the sale of the personal property, and the leasing of the farm, and the inability of the defendant to restore the farm to its former condition, by which means only the profit contemplated by the complainant can be realized, releases her from obligation to continue the defendant in possession of the premises. The court will therefore decree that the contract shall be delivered up and cancelled, and that the defendant relinquish the possession of the premises on the first day of March next, and on failure to do so, that a writ of possession shall be issued to the marshal, commanding him to turn the defendant out, and put the complainant into the possession. And in the mean time, the defendant is enjoined from committing any waste or injury to the farm, or any part of the improvement or timber on the same. And an account was ordered.

---

## Case No. 14,021.

### TIBBETTS v. The ARCTURUS.

[Nowhere reported; opinion not now accessible.]

---

## Case No. 14,022.

### TIBBS et al. v. PARROTT.

[1 Cranch, C. C. 177.] [1]

Circuit Court, District of Columbia. July Term, 1804.

#### PLEADING AT LAW—AMENDMENT—INSERTING INDIVIDUAL NAMES.

When an action is brought in the name of a mercantile firm, the court will suffer the declaration to be amended by inserting the names of the several persons who compose the firm.

[Cited in Addison v. Duckett. Case No. 77; Georgetown v. Beatty, Id. 5,344.]

Mr. Swann, for plaintiffs, moved to amend the declaration by specifying the names of the company.

Mr. Mason asked if there was any thing to amend by, and cited the cases of Nicholls v. Harrison, decided at December term, 1802 (not reported), which was a refusal by the court (Marshall, Chief Judge, and Cranch, Circuit Judge, against the opinion of Kilty,

[1] [Reported by Hon. William Cranch, Chief Judge.]

Chief Judge), to allow covenant to be changed to case, or case to covenant.

THE COURT (nem. con.) allowed Mr. Swann to amend, it being a different amendment from the one mentioned by Mr. Mason, and not changing the cause of action; but THE COURT expressed an unwillingness to extend the rule further than it had been.

[For subsequent proceedings, see Case No. 14,023.]

## Case No. 14,023.

### TIBBS et al. v. PARROTT.

[1 Cranch, C. C. 313.] 1

Circuit Court, District of Columbia. June Term, 1806.

PLEADING AT LAW—PROOF OF PARTNERSHIP.

In an action for goods sold by Tibbs & Company, the plaintiffs must prove themselves to be the firm of Tibbs & Company.

[Cited in Addison v. Duckett, Case No. 77; Woodward v. Sutton, Id. 18,009.]

Assumpsit for goods sold and delivered. [For former proceedings, see Case No. 14,-022.] On the trial of the issue of non assumpsit, Mr. Mason, for defendant, moved the court to instruct the jury that they must be satisfied that the contract was made with the plaintiffs, William P. Tibbs and Thomas Blanc. The deposition of the only witness on the part of the plaintiffs, says the goods were sold for and on account of William P. Tibbs and Company.

Mr. Jones, for plaintiffs, contended that it is not necessary for the plaintiffs to prove themselves to be partners, unless upon a plea in abatement.

THE COURT stopped Mr. Mason in reply, and said the law is too plain to require further argument. The plaintiffs must satisfy the jury that the contract was made between the plaintiffs and defendant. The deposition having only stated that the goods were sold by William P. Tibbs & Company, the jury must be satisfied by evidence that the house of William P. Tibbs & Company, consists of the plaintiffs, William P. Tibbs and Thomas Blanc. The plaintiffs took a bill of exceptions.

Verdict for defendant. New trial granted, on the ground of surprise, that the court should require such evidence. See the case of Woodward v. Sutton [Case No. 18,009], at Alexandria, November term, 1806.

TIBER, The (McCORD v.). See Case No. 8,-715.

TICKNOR (PARET v.). See Case No. 10,711.

TIDDEMAN (JELLY v.). See Case No. 7,-256a.

---

1 [Reported by Hon. William Cranch, Chief Judge.]

## Case No. 14,024.

### TIDMARSH v. WASHINGTON FIRE & MARINE INS. CO.

[4 Mason, 439.] 1

Circuit Court, D. Massachusetts. Oct Term, 1827.

MARINE INSURANCE — BURDEN OF PROOF — SEA-WORTHINESS—EQUIPMENT—REPRESENTATIONS.

1. In a writ on a policy of insurance, where the underwriters set up the defence, of misrepresentation, negligent navigation, deviation, and unseaworthiness, the onus probandi of the three former rests on the underwriters; but seaworthiness is to be proved by the assured, for it is a condition precedent.

[Cited in Hazard v. New England Marine Ins. Co., 8 Pet. (33 U. S.) 580; Lunt v. Boston Marine Ins. Co., 6 Fed. 568; Premuda v. Goepel, 23 Fed. 413.]

[Cited in American Ins. Co. v. Bryan, 26 Wend. 582; Slocovich v. Orient Mut. Ins. Co., 108 N. Y. 66, 14 N. E. 802.]

2. What is the proper rule as to seaworthiness. In what cases it is to be measured by the standard in the ports of the country to which the vessel belongs.

[Quoted in The Titania, 19 Fed. 106.]

[Cited in Cobb v. New England Mut. Marine Ins. Co., 6 Gray, 200.]

3. What equipments are generally necessary to constitute seaworthiness.

4. If a party makes a representation on the information of others, and states it, not as known to him, but merely as information, the representation is not falsified, so as to avoid the insurance, if the fact is not so, but the party has given his information truly.

[Cited in Clark v. Manufacturers' Ins. Co., 8 How. (49 U. S.) 249.]

[5. Cited in Bailey v. Hope Ins. Co., 56 Me. 479, to the point that contracts of marine insurance, wherever made, are supposed to be made with reference to the usages of the place to which the ship belongs.]

Assumpsit [by James H. Tidmarsh] on a policy of insurance, dated the 13th of October, 1826, of "$1000 on property on board schooner Emily, at and from Bahia to Halifax," by P. R. Dalton for James H. Tidmarsh. The declaration averred a total loss by perils of the sea and shipwreck on the 23d of November, 1826. Plea, the general issue. At the trial there was no question as to the proprietary interest of the plaintiff, nor as to the totality of the loss, the vessel having been shipwrecked, near Sambro lighthouse, in going into Halifax on the homeward voyage, nor as to the preliminary proofs of loss having been duly made. The defence turned principally upon questions of fact, which were very much discussed upon the testimony. The following points were made by Webster and Curtis for the defendant, and were replied to by Welsh for the plaintiff: 1. That the vessel was not seaworthy, at the time of her departure from Bahia, by reason of the badness and insufficiency of her sails and windlass. 2. That there was a misrepresentation in a letter, written by the plaintiff in January, 1826,

---

1 [Reported by William P. Mason. Esq.]