Judge Napton
delivered, the opinion of the court.
This was an application for an injunction. The complainant alleges, that he is the owner of two lots in block No. 86 of the city of St. Louis, one fronting on Pine st. about one hundred feet, and another lot of 64 by 101 feet, near the middle of the block, and that for his own convenience he appropriated about 15 feet taken from each lot for a private alley ; that at the time he made this appropriation the remainder of the-block was vacant, so that wagons, drays, &c., could pass and repass from Pine to Cbesnut street •, that wiien the owners of the other lots made their improvements, they conformed to the lines of the private alley; so- that it remained open for the public from Pine to Chesnut street. The complainant further states, that the city corporation caused the said alley to be paved, and after thus taking his private property for public-use, presented him a bill of $117 06 as the proportion assessed on-him, and demanded payment, which being refused, the city was proceeding to sell his lots for the payment of these taxes, by which a cloud'would be brought upon his title, &c.
The answer of the city admitted the ownership of the lots in complain *620 ant, the grading and paving of the alleys, and the attempt to force payment of his assessed taxes, but asserted that the charter and ordinances of the city authorised the proceeding. The answer admits that complainant have laid out the alley for his own convenience, and that the other proprietors may have been influenced by similar motives in conforming their buildings to the lines of the alley; but insists that the alley was thus open in 1839, and continued so with the full knowledge and consent of complainant. That in September, 1839, Rene Paul,., city surveyor, reported to the board of aldermen that said alley had been surveyed by him as city surveyor, by authority of the proprietors, and that the acquiescence of the complainant and the other proprietors in the use by the public, and the survey without objection, constituted a. dedication of this alley to public uses; and further, that whether it was. a public or private alley, the charter gave the city authorities power to, grade and pave it at the expense of the proprietors of the adjacent lots. The answer relied upon the charter and various ordinances of the city council as fully'authorising what their officers had done in the premises..
To this answer there was a replication, and the cause coming on to be heard upon the pleadings and proof, the injunction was dissolved. The-questions chiefly discussed in this case, are presented by the record in, such an unsatisfactory shape as scarcely to warrant us in expressing a definite opinion upon them. The ordinances of the city council, to, which reference is made by the answer, have not been preserved upon the record, nor has the evidence, if any was. offered in the court below,, been saved by bill of exceptions. The case was heard upon the bill, answer and testimony, as the record states., but there is no testimony before us.
The question of jurisdiction about which much has been said in the argument, seems not to have been made in the. circuit court. There was. no demurrer to the bill, nor did the answer set up any such defence. There does not appear to be any material difference of opinion in relation to the grounds upon which a court of chancery is authorised to interpose its powers in cases like the present. The only dispute is as to the application of the principle agreed onto the facts in-this case as they are disclosed upon the record. It is conceded that where a valid legal objection appears upon the face of the proceedings, through which the adverse party can alone claim any right to the complainant’s land, it is not such a cloud upon his title as will authorise a court of equity to stay proceedings; but where the claim is valid upon the face of the instrument on the proceedings sought to be set aside, and extrinsic facts are *621 necessary to show the invalidity of these proceedings, a case is made out for the interference of the chancellor. It is obvious that if the objections now taken to the proceedings of the city were limited to the one which relies upon the unconstitutionally of the ordinance which authorises the assessment of the paving tax, and fixes the ratio upon the owners of the lots adjoining the alley or street, there would be no necessity for a court of equity to interfere. That question could as well be tried in examing the purchaser’s title at law. It wo>«ld strike at the foundation of his title, and would be apparent upon the face of his title papers. But the principal ground upon which the complainant relies, is the position he assumes that the alley upon which the city authorities have entered is his private property, and not by any act or assent of his dedicated to public use. The determination of this question may depend upon facts outside of the ordinances of the city, and the proceedings thereon necessary to make out the purchaser’s title.
It maybe important to the complainant to have an immediate decision of this question, it being one of fact, and depending upon the presence of witnesses, whose memory and life, and accessibility, he is unwilling to risk to the chances of a future litigation. Waiving then the objection which might well be taken to raising this question upon the final hearing, we are not prepared to say that the case presented by the bill may not have been a proper one for an injunction.
The dissolution of the injunction upon the final hearing presents the only question remaining to be determined. We should be unwilling to venture any definite opinion upon the question of dedication. We are not in possession of all the facts which may have been before the circuit court, and every presumption is in favor of the decree. We must, however say, that so far as the case is presented by the bill, and answer, and exhibits, we should incline to the inference that this alley was fully within the jurisdiction of the corporate authorities of St. Louis. The charter of the city authorises the council to “open, alter, abolish, widen, extend, establish, grade, pave-, or otherwise improve and keep in repair, streets, lanes, avenues and alleys.” The power of grading and paving alleys is doubtless limited to such alleys as are public. The power to establish, open or widen alleys, necessarily implies a power to create an alley where none before existed ; but this, we presume, could only be done by making compensation, or upon the assent of the proprietors. Other provisions no doubt point out the steps to be taken in exercising this power of opening or establishing streets and alleys. The city authorities, in this case, certainly treated the alley now claimed by the *622 complainant as his private property, as a public alley, and the answer on the record sets up this defence. In 188.9 the alley was- open and used by the public without objection. In the same year the city surveyor reported to the board of aldermen, that this alley had been surveyed by him as city surveyor,, by authority of the proprietors, which report (it is stated in the answer ).is found in. the printed journal of said board. In 1840 an ordinance was passed' (8th Sept. 1840) making it the duty of the street commissioner to report to the city council every unpaved alley, which by reason of its remaining unpaved could not be kept clean ; and for the directing the commissioner, upon the passage of an ordinance for such purpose, to cause such alley to be graded and paved, and apportion the costs ‘ among the owners of the lots bordering thereon agreeable to their respective fronts. It appears that in pursuance of this ordinance the street commissioner, on the 27th Oct., 1840, reported to the city council that this alley, being unpaved, could not be kept in proper condition, and again in 1841 made a similar report, declaring further that said alley was a public nuisance. In consequence of these reports, an ordinance was passed on the 17th June., 1841, authorising the city engineer to have this alley graded and paved, and it was done accordingly.
What facts or circumstances will be sufficient to warrant a court or jury in declaring private property to have been dedicated to public use, either as. a street or alley, must necessarily vary in every case.. General, rules m,ay be settled, and have been settled, but after all the question is oneuof fact, and must be governed b.y its own circumstances. In Jarvis vs. Dean (3 Bingh. 447,) the court allowed the jury to presume a dedication to. public use, if they thought the street had been used for years, as a public thoroughfare, with the assent of the owner of the soil; and although in that case the street had not been opened or used as such but from four to five years, that circumstance was not considered conclusive against the dedication ; on the contrary, the court said that no particular length of time was necessary to establish a dedication, although this circumstance was entitled to weight, where the acts were in other respects of a doubtful character..
The principle was fully recognised and acted upon by the supreme court of the United States in the city, of Cincinnati vs. White’s lessees, (6 Peters, 431) and by this court, in the case of Carlin vs Paul (10 Mo. R.) In the case of the city of Cincinnati vs. White lessees, the court held that to constitute a dedication, it was only necssa *623 ry to appear that the ground had been used for the public purposes, and that this use had been with the assent of the owner.
In the present case, the complainant laid off an alley from his -lots for his own convenience, but permitted the public to use it. The adjoining proprietors accommodated their improvements to the same, and accordingly there was a public thoroughfare of thirty feet wide through the entire block, extending from one street of the city to another. The complainant does not pretend that any indications were given by him, that this alley was for his exclusive use. No gates or inclosures of any sort were erected to signify an intention of excluding the public. Every one was permitted to pass without objection. It was surveyed by the •city surveyor, not only without objection, but at the request of the complainant and' the other proprietors. Reports are made to the city council of its uncleanly condition, and ordinances are passed to cause it to be graded and paved. The proceedings of the council and its officers ■are duly printed in the city papers. No obligation is imposed upon the city authorities to give a special notice in these cases, and if there was, •it does not appear that the complainant was either absent or ignorant of these proceedings. The officers of the city proceed to execute the ordinance, by entering upon this alley and actually grading and paving it. All these things are done without objection or remonstrance, and it is not until the tax is soughtto be collected that we hear a complaint. It is strange that the complainant could suffer the city officers to send their servants upon his private lots and pave them without remonstrance, if he still regarded them as private property, and not open to the public use. We have no evidence that the complainant was ignorant of these proceedings. He does not allege, any want of notice in his bill, and the •answer asserts that he was not ignorant of them, and there is no proof on the record. Under these circumstances, we do not see how the corporate authorities eould regard this alley in any other light than a public thoroughfare.
We do not lay much stress upon the fact stated in the complainant’s bill, that he intended the alley and laid it off for his own private use. This is not at all inconsistent with his assent that it might be used by the public. The motive which influences almost all such appropriations or dedications, is the convenience and accommodation of the proprietor and an enhancement of the value of his property remaining. All the proprietors along this alley were doubtless influenced by similar motives. Their own convenience and the value of their lots were promoted by allowing this alley to be a public thoroughfare.
*624 Without, therefore, feeling warranted in such a record in dedicating how far the complainant had parted with his exclusive control over the land upon which this alley was laid off, we shall affirm the decree of the ■circuit court dismissing the bill.