Merchants' Bank et al. v. Evans et al.

————o————

THE MERCHANTS BANK OF MISSOURI and EMMA PLAYER, Defendants in Errors vs. BYRD EVANS, et al., Plaintiffs in Error.

1. *Land and land titles—Sales by United States Marshal under judgments at law—Must be made at a term of a Circuit Court—Act of Congress regulating process in United States Courts (1828.)*—Under the act of Congress passed May 19th, 1828, (4 U. S. Stat. at Large, 288, § 3), which provided that writs of execution and other final process issued on judgments and decrees rendered in any courts of the United States, and the proceedings thereupon should be the same, except their style, in each State, as were then (1828,) used in the courts of such States, the United States courts have no right to make any regulations for the government of their Marshals in conducting sales under executions at law, different from those fixed by the State laws. There never has been any law of this State, authorizing execution sales of real estate to be made in vacation of the Circuit Court, and during a session of a County Court; but our laws have always required such sales to be made during the session of the Circuit Court, excepting under acts creating certain Courts of Common Pleas. It is essential to the validity of such sales, that they should be made during the session of the proper court, and a violation of this rule would render the sale void, not only in a direct, but also in a collateral proceeding.

2. *Execution Sales—U. S. Courts—Order of Court to execute deed of land at a term subsequent to the sale—Relation—Rights of third parties.*—An order of a court directing the successor of a Marshal who had made a sale, to execute a deed to the purchaser, is simply an administrative, not a judicial act, and if made at a term subsequent to the sale, although it would relate, as to the parties, to the time of the sale, it would not operate to cut out the intervening rights of a stranger without notice.

3. *Equity—Land and land titles—Cloud upon title, what constitutes.*—If a defect in a deed is such as to require legal acumen to discover it, whether it ap-

pears on the face of the deed or proceedings, or is to be proven *aliunde*, it con-
stitutes a cloud on the title which courts of equity have jurisdiction to remove.
4.  *Land and land titles—Limitation—Adverse possession constitutes an affirma-
tive title.*—Adverse possession for ten years is not only a bar as a limitation,
but constitutes an affirmative legal title.

### Error to Gasconade Circuit Court.

*Charles Jones*, for Plaintiffs in Error.

The United States Circuit Court has always had the right by
the various acts of Congress from 1798 to the present time, to
prescribe rules for its action, and to authorize the sale of real es-
tate at a Circuit Court or County Court, and the rules of the
court, clearly show it. Such has always been and is now the
rule, and sales are constantly made at terms of County Courts.
These rules have been recognized, and sanctioned by the Uni-
ted States Circuit Court, and by the Supreme Court of the
United States, and are the law.

The courts of the United States, may by their rules not
only alter the forms, but the effect and operation of the process
whether mesne or final, and the modes of proceeding under
it. (Beers vs. Haughton, 9 Pet., 329; 7 Pet., 360, 361; Way-
man vs. Southard, 10 Wheat., 1; Bank of United States vs.
Halstead, 10 Wheat., 51; Pomroy vs. Manin, 2 Paine, 476;
Catherwood vs. Gapete, 2 Curtis, C. C., 94; Beers vs. Haugh-
ton, 1 McLean, 226; Ross vs. Duval, 13 Pet., 45; 4 U. S.
Stat. at Large, 4, 279; Kenerl vs. Shepley, 15 Mo., 640;
Brightley's Digest, 792, 793, *et seq.*)

*E. P. McCarthy*, for Plaintiffs in Error.

I. The Circuit Court of Gasconade or Franklin County, has
no power to review and vacate the process, orders and im-
struments of the Federal Court.

The act of the Marshal in making the deed is the act of the
court. "State Courts are exempt from all interference by
the Federal Tribunals, but they are destitute of all power
to restrain either the process or proceedings in the National
Courts. Circuit Courts and State Courts act separately, and
independently of each other, and, in their respective spheres of
action, the process issued by one is as far beyond the reach

of the other as if the line of demarkation between them, was traced by land marks and monuments visible to the eye."

Riggs vs. Johnson County, 6 Wall., 195--6.

State Courts have no power to restrain or prevent the execution of any process of the Federal Courts, on any grounds whatever.

And even where the process is attachment, and levied on property of third parties not defendants in the writ and in no wise connected with the suit, the State Court cannot interfere.

Freeman vs. Howe, (24 How., 457 and cases cited.)

II But even if the Circuit Court had the power or jurisdiction to review these proceedings in a proper case, the Circuit Court erred in granting a decree in the case vacating the Marshal's deed. The sole question was upon the sale being at a term of County and not Circuit Court, it being conceded under the evidence, that the allegation of payment is out of the case.

And upon this only remaining point against the deed, plaintiff's proof is simply the deed itself. If the deed is void at all under the evidence in this case, it is void upon its face.

It recites that the sale was made during the sitting of a stated term of a County Court. There is no evidence in this case that that sale was made at the County Court sitting, &c., except the return of the Marshal to the execution, and that is recited in the deed. If therefore, this objection to the Marshal's sale is well taken, this case falls within the settled rule of cases in which Equity will not interfere. (Janney vs. Spedden, et al., 38 Mo., 401; Ewing vs. City of St. Louis, 5 Wall., 418; 2 Sto. Eq. Jur., § 700, and cases cited in note; Peirsoll, et al. vs. Elliott, 6 Pet., 95.)

III. Plaintiffs action was barred by the statute of limitations, which was pleaded by defendants.

*Hitchcock, Lubke and Player*, for Defendants in Error.

The sale by the U. S. Marshal was made at a term of the County Court of Franklin County, and not at a term of the Circuit Court, and for that reason was illegal, irregular

and void; and the deed made thereunder and which is now sought to be set aside, is void and passed no title.

Under the act of Congress passed May 8th, 1792, (1 U. S. Stat. at Large, p. 276 § 2.) the U. S. Courts had the power to make any regulations they saw fit in regard to final process by rule. This law of 1792 remained in force until May 19th, 1828 when Congress passed "an act further to regulate process in the Courts of the United States. " (4 Stat. at Large p. 281 § 3) by which it was provided, " That writs of execution and other final process issued on judgments and decrees rendered in any Courts of the United States, and the proceedings thereupon, shall be the same, except their style, as are now (1828) used in the Courts of such States, saving to the Courts of the United States in those States in which there are not Courts of Equity, with the ordinary Equity jurisdiction, the power of prescribing the modes of executing their decrees in equity by rules of Court. *Provided, however*, that it shall be in the power of the Courts if they see fit in their discretion, by rules of Court, so far to alter final process in said Courts, as to conform the same to any change which may be adopted by the Legislatures of the respective States for the State Courts. "

This last is the act which has uninterruptedly, from 1828 to the present time, regulated executions issuing from the Federal Courts and the proceedings thereupon.

In order to ascertain, then, what writs of execution and other final process issued on judgments at law in the United States Courts, and the proceedings thereon should be in any state at any given time since May 19th 1828, we must first see what they were in said states on the 19th of May, 1828. 2nd. Whether between that day and the day in question, any change in these respects had been adopted by the State Legislature for the State Courts. 3rd. Whether the United States Courts of that State had seen fit by their rules, to conform their final process to the changes made for the State Courts. (Conk. Treat., 3 Ed., pp. 317, 341, 460; Beers vs. Haughton, 9 Pet., 361, 362; Ross vs. Duval, 13 Pet., 45; The United States vs.

Knight, 14 Pet., 301; Amis vs. Smith, 16 Pet., 312; Duncan vs. Darst, 1 How., 309, 310; McCracken vs. Hayward, 2 How., 608; Riggs vs. Johnson County, 6 Wall., 190; Smith vs. Cockrill, 6 Wall., 756; Evans vs. Riehl, 10 Mo., 433,)

The cases of Kenerl vs. Shepley, 15 Mo., 640, and Keene vs. Barnes, 29 Mo., 378, can have no application to the case at bar, because the Marshal's sales therein considered, were made long prior to 1828, and under the earlier laws of Congress which were essentially different from the law of 1828. The same remark applies to the cases of Wayman vs. Southard, and Bank vs. Halstead, 10 Wheat., 1 and 51.

The judgments under which the United States Marshal made the sale in question to Evans, were judgments rendered in common law suits.

At the time when the law of 1828 went into effect the laws of Missouri required, that "When any lands and tenements shall be taken in execution by any sheriff or other officer, it shall be his duty to expose the same to sale at the Court House door, on some day during the term of the Circuit Court of the county wherein they are situated."

This provision concerning the sale of lands under execution has remained a part of the law of this State from 1825 to the present day, and it is no empty quibble to require that the U. S. Marshals should make the time and place of these sales under execution correspond with those prescribed by the State laws.

The people know that sheriffs' sales generally take place at the Court House, during the session of the Circuit Court, and they go there at that time for the purpose of seeing what property is to be sold, and to make purchases. Again, they look for the advertisements and notices of sale, when the sales are to take place at the Court House in term time, because they are expected, when a sale at another time in a different town before an inferior tribunal, would escape the observation of all except those who are especially interested. (Mers. vs. Bell 45 Mo. 335.)

This Court has jurisdiction to declare null and void the deed of the Marshal in question.

Much stress seems to be placed by the plaintiffs in error, upon the fact that the deed recites that it was made under anthority of an order of Court. This order was simply an authority given by the Court to the Marshal to execute a deed for land sold by his predecessor, and the only thing neceessary to obtain it was that the purchaser at Marshal's sale should satisfy the Court that he had paid the money bid. It was made without notice to any one, and was simply one of those formal orders of Court, provided for in our execution laws in cases where a sheriff has died after sale and before making a deed. It is provided simply because the new sheriff cannot know what was done during the life-time of his predecessor. A deed made under such order, has no other or greater force or authority, than one made without such order by the sheriff or marshal who made the sale.

The acts of the United States Marshal in selling under execution, are simply ministerial, and the State Courts have a right to set aside void deeds made by him. And the order of Court makes no difference.

ADAMS, Judge, delivered the opinion of the Court.

This was an action in the nature of a bill in equity, commenced in 1864 in the Circuit Court of Franklin County and taken by a change of venue on the application of defendants to the Gasconade Circuit Court.

The petition, in substance, alleges that the plaintiffs are owners in fee of certain lands in Franklin County which are described in the petition.

The petition sets forth the title under which plaintiffs claim, by which it appears that these lands originally belonged to various parties trading under the firm name of the "Missouri Mining and Smelting Association"—that one Brown obtained a judgment against said parties in the Franklin County Circuit Court, under which he caused the land to be regularly sold at execution sale, and bought them and took a Sheriff's deed for them and entered into possession thereof, and by mesne conveyances from him the plaintiffs claim title, and claim that they and those under whom they claim have

been in continuous possession ever since the execution sale and deed, which was made in 1846.

The petition further alleges that Augustus H. Evans, deceased, the ancestor of the defendants, and another party had obtained judgments in the Circuit Court of the United States at St. Louis, which had been paid off but were fraudulently kept on foot without full satisfaction being entered. And that the said Augustus H. Evans fraudulently caused executions to be issued on said satisfied judgments and had them levied on the same lands, and that under these satisfied judgments and executions the then Marshal (Birch) sold the lands during the session of the County Court of Franklin County, and when the Circuit Court was not sitting.

That this sale was made before the sale under which plaintiffs claim ; that at the time the said Brown purchased he had no knowledge or information that such sale had taken place, and the plaintiffs purchased without any notice thereof; that subsequently to the purchase made by Brown, Marshal Birch having been removed from office his successor Robert C. Ewing under the order of the United States Circuit Court executed a Marshal's deed to Augustus H. Evans for said lands so bought by him under said executions.

The plaintiffs set up, not only that this Marshal's deed was fraudulently obtained as aforesaid, but that the Marshal's sale and deed are void, because such sale was not made at a session of the Circuit Court but at a session of the County Court .

The petition asks that this Marshal's deed be set aside as a nullity, and that the title be divested out of the defendants, who are heirs at laws of Augustus Evans, deceased, and invested in plaintiffs.

The answer denies the material allegations of the petition in regard to plaintiffs being owners of the land, and denies all fraud on the part of their ancestor, and the answer charges that the Marshal's sale and deed to their ancestor, was valid ; that under the rules of the United States Courts, these lands were properly sold at a session of a County Court; that under his purchase their ancestor took possession, and that he and

they have been in continuous possession, and they set up this possession as a bar under the statute of limitations. The answer then asks for affirmative relief by way of counter-claim or cross-bill, and prays that the deeds and title set up by the plaintiffs may be set aside as clouds upon their title.

On the trial, the plaintiffs gave evidence tending to show that the judgment under which the ancestor of the defendants bought these lands had been paid off, and evidence conducing to show that after the purchase by Brown, the ancestor Evans congratulated him on his success, and set up no claim to these lands. There was also evidence given conducing to show that Brown took possession under his purchase, by renting out a field of some fifteen or more acres, and that this possession was continued, and kept up by the parties claiming under him.

The evidence does not show any continuous possession by the defendants or their ancestor. There was no evidence given, that the plaintiffs or those under whom they claim, had any notice of the Marshal's sale to Evans.

The defendants introduced evidence tending to show that the United States judgments were not satisfied, but that at least the costs remained unpaid when Evans purchased.

The Circuit Court found for the plaintiffs, and made a decree as prayed for in the petition, and the defendants excepted to its rulings, and have brought the case here by writ of error.

The first question raised by this record is the validity of the Marshal's sale and deed to Augustus H. Evans, the ancestor of the defendants.

Under the act of Congress of 1792, the United States Courts had the power to make such rules as they might deem proper in regard to final process and the proceedings of the Marshal thereon. This act remained in force until the 19th of May, 1828, when Congress passed "an act further to regulate processes in the courts of the United States." (4 Statute at Large, 288). By the third section of this act, it is provided that writs of execution and other final process issued on judgments and decrees rendered in any courts of the United States, and the pro-.

ceedings thereupon, shall be the same, except their style, in each state as are now, (1828) used in the courts of such States, saving to the courts of the United States, in states in which there are not courts of equity with the ordinary equity jurisdiction, the power of prescribing the modes of executing their decrees inequity, by rules of courts. *Provided, however*, that it should be in the power of the courts if they saw fit in their discretion, by rules of courts, so far to alter final process in said courts as to conform the same to any change which might be adopted by the legislatures of the respective states for the State Courts.

The transcript in this case shows that the Marshal's sales in this case were made under judgments at law and not decrees in equity.

It will be seen that since the passage of the act of 1828, the United States courts have no right to make any regulations for the government of their Marshals, in conducting sales under executions at law, different from those required by the State laws.

They may conform them to such alterations as may from time to time be made by state laws.

This has been the construction of the act of Congress of 1828 by the Supreme Court of the United States ever since its passage. The question has arisen in numerous cases, and has uniformly been decided the same way by that court. (See Beers vs. Haughton, 9 Pet., 361; Beers vs. Duval, 13 Pet., 45; United States vs. Knight, 14 Pet., 301; Duncan vs. Darst, 1 How., 301; McCracken vs. Hayward, 2 How., 610; Rriggs vs. Johnson County, 6 Wall., 190; Smith vs. Cockrill, 6 Wall., 756.)

Those cases decided by that court maintaining a different doctrine, arose under the act of 1792, and are not in conflict with the authorities above cited.

There never has been any law of this State, authorizing execution sales of real estate to be made in vacation of the Circuit Court and during the session of a County Court. Our laws have always required such sales to be made at the court house, during the session of the Circuit Court, except under acts cre-

ating Common Pleas Courts, they are allowed to be made during the sessions of the Common Pleas by the express or implied provisions of such acts.

The place and time of sale, as thus fixed by the laws of this State, must be observed in execution sales as a regulation of supreme importance. (Jackson vs. Magruder, *ante* p. 55.)

It is well known by the citizens, that sales of that character cannot take place at a County Court, and therefore a notice to that effect would be disregarded, and result in a ruinous sacrifice of property. In my judgment, it is essential to the validity of such sales that they should be made during the session of the proper court, and a violation of this rule would render the sale void, not only in a direct but also in a collateral proceeding.

In Smith vs. Cockrill, 6 Wall., 756, it was held by the Supreme Court of the United States in an action of ejectment, that a Marshal's sale and deed were void, when there was no appraisement of the real estate as required by the laws of Kansas.

If a Marshal can violate the law by selling at a County Court, why not suffer him to do so when no court at all is in session, or at a place where no courts are held? It seems to me that there can be no doubt about the invalidity of the Marshal's deed under consideration.

Yet the facts of this invalidity would not be manifest to persons unskilled in the law, nor even to the most skillful without close investigation of the several acts of Congress, and the authority of the courts to regulate such sales. And therefore the existence of such a deed would throw a cloud over the title of the real owner and render the land less salable.

It is urged with great vehemence by the learned counsel for defendants, that the order of the United States Circuit Court directing the successor, the Marshal who made the sale to execute a deed to the purchaser, was a judicial act of the court, and as such cured all prior defects.

This position, to my mind, is untenable. That order was made several years after the sale, and subsequently to the purchase made by Brown. It was made in the absence of all

parties, there being no presumption that they remained in court for any purpose. It was therefore, a mere *ex parte* proceeding, not in the nature of a judicial act, for there was nothing to adjudicate. This act of the court was simply administrative, the *ex parte* petition was presented, and the order followed as a matter of course. By this order the then existing Marshal was empowered to do only what his predecessor could have done without such order, if he had remained in office, and the deed made by him can have no more effect than the deed made by the previous Marshal.

A Sheriff's or Marshal's deed relates to the time of sale. But this rule is not allowed to operate so as to cut out the intervening rights of strangers without notice. It only relates as to the parties and their privies and purchasers without notice.

And therefore in this case if the Marshal's Deed was valid, it did not relate to the sale so as to affect the rights of the plaintiffs.

After the final trial and decree the question was raised by motion in arrest, that there was no equity in plaintiff's petition and the point is made here that their remedy if any, is complete at law.

I have already intimated that such a title as plaintiffs claim under, is sufficient to cast a cloud over the defendant's title and is such as would render their land unsalable in the market. I know that the authorities are somewhat conflicting in regard to what sort of titles constitute a cloud, so as to warrant a Court of equity to interfere and remove it. Some of the Courts hold, that if the defect is apparent on the deed, the law will not entertain jurisdiction; but I think that the weight of authority and reason sustain the position, that if the defect is such as to require legal acumen to discover it, whether it appears on the deed or proceedings, or is to be proven *aliunde,* Courts of equity entertain jurisdiction to remove the cloud. Wells vs. Weston (22 Mo., 384) was a bill in chancery to enjoin a sale and deed for taxes, which had been levied by the town of Weston under a legislative act, authorizing it to tax all real estate outside the town limits to the extent of half a mile.

The bill was demurred to and the demurrer sustained. The only point relied on in the bill was that the Act of the Legislature was unconstitutional, and although the sale and deed would for that reason be void, it was urged in the complaint that such sale and deed would cast a cloud on the complainant's title. Judge Leonard delivered an able opinion holding that the law was unconstitutional, but reversed the judgment of the Circuit Court. In Lockwood vs. City of St. Louis, (24 Mo., 20,) the same point was made and decided the same way. That was an injunction to restrain the collection of taxes on real estate because of their illegality, and this Court sustained the jurisdiction on the ground that a cloud would be cast on the plaintiff's title.

The remarks of Judge Napton in Gamble vs. St. Louis, (12 Mo., 617,) are rather too broad and in conflict with the weight of authority, if he intended to be understood as holding in all cases where the defect appears on the face of the proceedings, a Court of equity will not interfere but leave the parties to their remedy at law.

In the case at the bar, the defendants are so well satisfied with their Marshal's Deed, that they set it up in their answer as valid, and ask for affirmative relief against the title relied on by plaintiffs, and pray the Court to set aside the plaintiff's deeds as clouds on their title.

It seems to me that such a title so relied on by defendants, is a sufficient cloud to give a Court of equity jurisdiction to remove it.

An objection is made to the form of the decree. There appear to be more lands embraced in defendant's deed than are covered by plaintiff's petition and deeds, and the decree not only sets aside the deed, but adjudges the whole of these lands to the plaintiffs. This was no doubt a clerical mistake, and the decree will be so modified here as to embrace only the lands claimed by plaintiffs in the petition, and that the defendants and those holding under them be forever enjoined from setting up said deeds against the plaintiffs and those holding under them. Although this form of judgment is not asked

for in the petition, the fact, alleged therein and proved will warrant it.

There is nothing in the objection that the plaintiff, Emma T. Player, does not show a regular chain of paper title. Adverse possession for ten years is not only a bar as a limitation but constitute an affirmative legal title.

Upon the whole case, with the above modification in the judgment, it will be affirmed.

The other Judges concur.