Wyxy, J.
The important questions presented in this case are the following:
First — Does the petition disclose a cause of action ?
Second — Is the act of March 1, 1860, extending the charter of the New Orleans Gaslight Company, as now established by law, from first April, 1875, until first April, 1895, repugnant to articles 115 and 116 of the constitution of 1852, requiring the object of every law to be expressed in the title, and prohibiting the revival or amendment of a law by reference to its title?
Third — Are the acts of twentieth April, 1870,. and tenth July, 1873, incorporating the .plaintiff company and conferring on it the sole and exclusive privilege of making and vending gas in the city of New Orleans for fifty years from the first April, 1875, repugnant to article 114 of the constitution of 1868, requiring the object of every law to be expressed in the title, and likewise repugnant to said constitution, in so far as the said act creates a monopoly in favor of plaintiff. Other questions arise in regard to the rights of each of the intervenors which will be stated hereafter.
In order to determine whether the plain tiff discloses a cause of action it will be necessary to consider the allegations of the petition, which for the purpose of the inquiry must be taken as true.
Plaintiff alleges that by the act approved April 1, 1835, the defendant obtained from the State of Louisiana a charter, amended March 10, 1845, and also on fifteenth March, 1854, conferring on it the sole and exclusive right to make and vend illuminating gas in the city of New Orleans for forty years, or until first April, 1895, “ at which period all the corporate privileges of said company shall expire; that the defendant, the New Orleans Gaslight Company, has continued to enjoy all of the franchises aforesaid until-now; that plaintiff, the Crescent City Gaslight Company, obtained from the State of Louisiana by act of April 20, 1870, a charter, amended July 10, 1873, granting to it tlie' sole and exclusive privilege of making and vending gas in the city of New Orleans for fifty years, from first April, 1875, the period at which defendants’ corporate privileges expire, according to the terms of its charter, granted in 1835. Petitioner further shows that the act approved March 1, 1860, entitled “ An Act to extend the area *140 of gas lighting in the city of New Orleans, and to reduce the price now paid by gas consumers,” which act provides that the charter of defendant, “ the New Orleans Gaslight Company, as now established by law, shall remain in full force and effect until the first day of April, 1895,” is unconstitutional and void, and no rights accrued to defendant thereunder, because said act was passed in violation of articles 115 and 116 of the constitution of 1852, then in force; nevertheless, petitioner shows and avers that the New Orleans Gaslight Company aforesaid has been assuming that its said charter will not'expire until the first day of April, 1895.
Petitioner now further shows that the Company, plaintiff, in order to avail itself of the exclusive privilege to make and vend gas in the city of New Orleans, from and after the first day of April, 1875, as aforesaid, granted by the 8th section of plaintiff’s charter, as aforesaid, will be obliged to expend large sums of money, exceeding one million of dollars, in the erection of suitable works, buildings, fixtures, machines, etc., etc., and in laying mains, pipes, etc., etc.
Petitioner shows that it will be necessary to commence the construction of such works at once, in order to be ready to deliver gas at the time fixed when the privileges of the Company will commence. Petitioner shows that it is of paramount importance, both to plaintiff and the public, that the said works and preparations shall be so completed, and thatif the Company is prevented from so completing its works before the first of April, 1875, it will suffer irreparable loss.
Petitioner now further shows and avers, that the assertions and claims of the New Orleans Gas Light Company to the pretended extension of its charter for twenty years beyond the first day of April, 1875, as aforesaid, is a slander upon the title of plaintiff, to the rights and privileges in its charter contained, as hereinbefore set forth. Petitioner further shows that the said pretensions and claims of the said New Orleans Gas Light Company are calculated to, and do impair the value of plaintiff’s charter, and the credit of the company, and are calculated to, and do impede the company in its efforts to complete the necessary preliminary works, as aforesaid, and thereby cause plaintiff damages largely in excess of five hundred dollars, and work plaintiff an irreparable injury.
Petitioner still further shows that unless the pretended extension of the charter of the said New Orleans Gas Light Company, can be adjudged null and void, and unless the said company shall be forbidden by decree of court from asserting such pretensions, and thus the cloud be removed from the title of plaintiff’s charter, plaintiff will suffer still greater damage and irreparable injury; all of which can, and will be fully and specially shown on the trial.
*141 Finally petitioner shows that a writ of injunction is necessary to prevent the New Orleans Gas Light Company and its officers and directors from asserting any right or claim, to make and vend illuminating gas, in the city of New Orleans, from and after the first day of April, 1875, the date of the expiration of the charter of the said company, as aforesaid.
The relief prayed for under the foregoing allegations is, that the plaintiff be decreed to have the sole and exclusive privilege to make and vend illuminating gas in the city of New Orleans for fifty years from first April, 1875; that the act of March 1, I860, extending defendant’s corporate life and privilege to make and vend illuminating gas in New Orleans from first April, 1875, until first of April, 1895, be decreed unconstitutional and void, and that the defendant be injoined, restrained and prohibited from assuming or claiming in any manner the right to make and vend illuminating gas after the first April, 1875, or from attempting to continue to make and vend it after said date.
It appears from the foregoing allegations, which must be taken as true, that the plaintiff, under its charter or contract with the State, has undertaken to begin on the first April, 1875, the large business of making and vending gas in the city of New Orleans, an enterprise exclusively confided to it; that in order to commence operations at said time, suitable works, buildings, fixtures, machines, the laying of gas pipes, etc., have to be constructed, involving an expenditure of large sums of money, exceeding one million of dollars; that if said works and preparations are not completed for the manufacture, sale and delivery of gas by that time, both the plaintiff and the public will suffer irreparable loss; that the assertions, pretensions and claims of defendant that its charter was continued for twenty years from first April, 1875, by act of March 1, 1860, which is void for unconstitutionality, are calculated to and do impair the value of plaintiff’s charter and the credit of the company, and are calculated to and do impede the company in its efforts to complete the necessary works as aforesaid, thereby causing large damages to plaintiff; and that said unfounded pretensions will continue to work plaintiff irreparable injury, unless said act of March 1, 1860, be decreed unconstitutional and void, and the defendant be inhibited from setting up rights thereunder; that the plaintiff is entitled to the use of its credit in raising funds to construct the large works, and make the preparations necessary to begin the manufacture and sale of gas on first April, 1875, can not be doubted; and that it is injured by the pretensions of defendant, founded on the act of March 1, 1860, calimed to be void, is equally certain. If the plaintiff is injured to the extent claimed, and is crippled by the loss of its credit, so as to be impeded in carrying out its contract *142 with the State, by the pretensions and claims of defendant, founded on the act of March 1, 1860, which is alleged to be unconstitutional and void, the question is, can this court redress the wrong of which the plaintiff complains and give the relief prayed for in the petition ?
We think that it can. Article 10 of the constitution provides that: “All courts shall be open, and every person shall for injury done himin his land, goods, person, or reputation, have adequate remedy by due process of law and justice administered without denial or unreasonable delay.” “ In all civil matters where there is no express law the judge is bound to proceed and decide according to equity.” * * * Revised Code, article 21.
The franchise of the plaintiff is property, and it has been injured in the enjoyment thereof by the claims and pretensions of the defendant, founded on a statute alleged to be unconstitutional and void. It is true the right of the plaintiff to make and vend gas will begin on first April, 1875, but the right to sell shares of its capital stock to the amount of three millions of dollars, and the duty to erect works, buildings, machines, lay gas pipes, and prepare every thing necessary to begin the enterprise or business, vested the moment the corporation began. Indeed all of plaintiff’s franchises vested from the moment the grant was made by the State, the exercise of the right, however, to make and vend gas being postponed till first Apiil, 1875.
If the claims and pretensions of defendant, founded on a void statute, destroy the credit of plaintiff so that its shares of capital stock can not be sold, or funds raised, in order to construct the necessary works to begin the business of gas making by the time stipulated in the charter, are not the rights of the plaintiff, to that extent, invaded 1 If these unfounded claims and pretensions hinder or prevent the plaintiff from getting ready to begin business on the first April, 1875, is not an injury sustained on account thereof 1
Not only plaintiff’s right to sell shares of its capital stock is invaded, but, practically, all the privileges conferred by the charter are defeated, because plaintiff is stripped of the means necessary to begin the business contemplated by the grant. The plaintiff has as much right to use the means authorized by the charter to make its preparations, as it will have to pursue the business when the preparations are made j. and an invasion of the one ought to be redressed as well as an invasion of the other. A void title set up to defeat plaintiff’s right to prepare for the business, invades the charter as effectually as if set up to obstruct the business after it has begun.
It is urged, however, that this is not one of the actions mentioned in the Code of Practice. The authors of our laws have not seen fit to prescribe forms for every legal demand, and they have not catalogued *143 in the Code of Practice all the actions that may be brought in our courts; it is, perhaps, well that they have not done so, lest by the omission of a form, substantial relief in some case might be denied to a person whose rights have been invaded. The learned counsel of defendant insist that as their client had reasonable cause to believe' that its claim, founded on the act of March 1, 1860, is valid, there is n.o cause for an action of damages on account of the assertion thereof; that their client committed no fault, which is essential to recovery of damages, under article 2315 of the Revised Code, which declares that “ every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” * * * And citing a case in 11 An. to the effect that “ when there is no fault there can be no actionable damage,” they conclude that no pis or right of the plaintiff has been invaded, and no relief should be granted by the court.
The fallacy' of the reasoning consists in the assumption that this is an action of damages under article 2315 of the Revised Code, and because it does not properly lie there, no right of the plaintiff has been invaded and no relief can be granted.
In our opinion the plaintiff has shown an injury, and if there is no express law giving a remedy, it can appeal to tlie equity powers of the court for redress. Revised Code, article 21; Marbury v. Madison, 1 Cranch 177; Dodd v. Benthal, 4 Heiskal 602; State v. Patterson, 34 N. J. Law, 163; State v. Jersey City, 34 N. J. Law 390; Story’s Equity Jur., page 31; Broom’s Legal Maxims, 180; Hillard on Injunctions, 550 ; England v. Lewis, 25 Cal. 357 ; Evans v. Merchants’ Bank, 51 Mo., 345 ; 22 Missouri 348 ; see also Osburn v. The Bank of United States. 9 Wheaton 742.
If, however, the cause of action were doubtful, we would feel inclined in view of the public interest involved in the issues herein, to maintain the suit and proceed with the trial on the merits. As the learned judge a qiio well remarks in his written opinion, the making and vending of gas for the public in New Orleans, is something in which the community at large are interested, and they are concerned in having the opportunity to obtain gas secured to them beyond dispute or doubt. If, therefore, it should be fonnd that the right of the defendant to make and vend gas under existing legislation, ceases on the first of April, 1875, and that right is given exclusively to the plaintiff, then it might happen in case of the postponement of the questions issue until that date, that the city of New Orleans would be left in darkness for a time for want of the necessary preparations on the part of the lawful agent of the State to make it. We therefore conclude that the exception, that the petition discloses no cause of action, can not be maintained.
*144 We now come to the question : Is the act oí first March 2860, extending the charter of the New Orleans Gaslight Company, as now established bylaw, from first April, 1875, uutil first April, 1895, repugnant to the articles 115 and 116, constitution of 1852, requiring the object of every law to be expressed in the title, and prohibiting the amendment of a law by reference to its title.
The title is: “An Act to extend the area of gas lighting in the city of New Orleans and to reduce the price now paid by consumers.”
Section one provides : “ That the charter of the New Orleans Gaslight Company, as now established bylaw, shall remain in full force and effect until the first day ot April, 1895; provided that nothing contained in this act shall be construed so as to continue the exclusive privilege granted to said company beyoml the1 period fixed by its present act of incorporation.” * * * It also contains clauses reducing the price of gas to $4 per one thousand cubic leet, and requiring within three years the said company to lay down nod less than fifteen miles of main pipes through the four districts of the city, according to their respective wants, and also requiring it to lay down, free of charge, the main pipes necessary for lighting the levee or river front of the city whenever required to do so by the Common Council.
Section two provides: “That the New Orleans Gaslight Company shall have the power to increase, from time to time, the capital stock of said company, as the board of directors may determine, to an amount which shall not exceed one million of dollars.”
Section three provides that the act shall not take effect until it is accepted by not less than two-thirds of the stockholders. The object of the act was doubtless to give the defendant an extension of its charter for twenty years from first April, 1875, and that really was the grant made by the State) the motive or inducement for making it being the advantage contemplated to accrue to the people of New Orleans by having gas extended over a greater area, and supplied to them at a cheaper rate. This object is not embraced in the title. No hint or clue is given ; nothing is suggested in the title indicating the purpose to prolong the period of duration of the charter of the New Orleans Gaslight Company, which iiad not then expired by fifteen years. The company is not named in the title.
The purpose to extend the charter of the New Orleans Gaslight Company for twenty years ftom the first April, 1875, is no more disclosed in the title — “An act to extend the area of gaslighting in the city of New Orleans, and to reduce the. price now paid by consumers,” than the purpose to create a new corporation for making and vending of gas is indicated therein. And who doubts that the area of gaslighting could be extended, and the rate of selling it be reduced, as well *145 by creating one or several new corporations to operate gas works and to compete in carrying on the business? Yet,'if under this title one or several corporations had been created for the purpose of operating gas works for twenty years, or for any period, could it be said that such a purpose, the creation of a corporation, was disclosed in the title 1 And the prolonging of defendant’s corporation for twenty years, virtually gives it a new charter for that period. Moreover the title is deceptive, and calculated to mislead the mind from the true object of the statute. No member of the General Assembly at the time the bill was about being passed, on hearing the title read, would have supposed that its object was to obtain from the State a grant extending the charter of the New Orleans Gaslight’ Company for twenty years, or until first April, 1895. A member who would object to extending the charter, might readily consent to a reduction of the price of gas and to the extension of the area supplying it. We therefore conclude that the act of March 1, 1860, extending the charter of the New Orleans Gaslight Company, as now established by law, until the first day of April, 1895, is repugnant to article 115 of the constitution of 1852, then in force, and is therefore void. 4/An. 298; 5 An. 96; 23 An. 720; Cooley on Limitations, 141, 150; 14 Indiana 195; Adams v. Webster, and Morrison v. Larkin, 26 An. 699.
It is urged, however, that whether the act of 1860 is constitutional or not,it was a contract that has baen duly accepted by the parties; that the defendant in performance of the requirement thereof has extended the area and reduced the price of gaslights in the city of New Orleans.; that the State, after receiving the benefits of the contract, can not deny the validity thereof; and that the plaintiff, the grantee of the State, is estopped by the act of its grantor from disputing the rights of the defendant, arising under said statute. This argument is unsouud. The defendant was charged with notice that the Legislature was prohibited from passing an act or granting a charter in contravention of article 115 of the constitution; and the statute in question, passed in violation thereof, was utterly void from the beginning.
If the statute was void, the grant therein to the defendant, prolonging its charter for twenty years, was invalid; and no subsequent act of its own could cure the infirmity or operate an extension of its charter, because a creature can not be its own creator. And no act of the General Assembly could cure the defect or prolong the charter, unless done in the manner prescribed by the constitution and not in violation thereof.
Nothing but a valid statute of the State could confer the grant extending the charter of the defendant until 1895 ; and as before remarked, the act of March 1, 1860 being unconstitutional, was utterly void *146 from the beginning. Cooley’s Constitutional Limitations, 188; 25 Missouri 341; 2 Dal. 308; 1 Crunch 137; 5 M. 581; 3 Allen 407; 29 Missouri 593; Marsh v. Fulton County, 10 Wal. 677; 3 An. 295; Dillon on Municipal Cor., 2d ed. sec. 17; 22 An. 402 ; 5 Mason 441; 4 Cal. 51; 10 Iredell 112; 4 Hawkins 132; 1 Sum. 278; State ex rel. Smith v. Dubuclet, State Treasurer, 23 An. 267.
We come now to the question whether the acts incorporating the plaintiff’s company and conferring on it the sole and exclusive right to make and vend illuminating gas in the city of New Orleans for fifty years, from first April, 1875, are repugnant to article 114 of the constitution of 1868, then in force, requiring the object or objects of every law to be embraced in the title. And here the main objection is as to the title of the act of twentieth April, 1870; that its title, “ an act to incorporate the Crescent City Gaslight Company,” does not cover the monopoly contained in the eighth section thereof; that there is nothing in it indicating the purpose to grant the sole and exclusive privilege to make and vend gas in the city of New Orleans for fifty years from first April, 1875. To this the plaintiff replies that under a similar title, a monopoly of the same kind was granted to the defendant in the charter of 1835, which was recognized by this court in the case of Paulding, 12 Rob. 378, and which has been enjoyed by the defendant for nearly forty years, without its validity having been questioned by any one. But the object of the act, as stated in the title, was “ to incorporate the Crescent City Gaslight Company.” To incorporate a. company is to create it with certain powers and privileges; those powers and privileges need not be detailed, for if they were, the title would be as long as the act. The title of the act disclosed the creation of a gas company ; this was sufficient to cover the monopoly or exclusive privilege to make and vend gas.
The precise question was before this court in The Louisiana Lottery Company vs. Richoux, et al. 23 An. 743, and also in the State ex rel. Belden vs. Fagan, 22 An. 546, where it was held, that an exclusive privilege or monopoly could be granted under the usual title to incorporate a company. And in these decisions it was held, that the State could create a monopoly; that it could give the Crescent City Slaughterhouse Company the exclusive privilege to keep a slaughterhouse; and, that it could confer on the Louisiana Lottery Company the exclusive privilege to sell lottery tickets.
However odious monopolies may be, the sole question for the court to determine in this case is, had the Legislature the power under the constitution, to grant the plaintiff the sole and exclusive right to manufacture and sell illuminating gas in the city of New Orleans for fifty years ? If they had the power, they can not beeontrolled by the judi *147 cial department in the exercise thereof, however unwisely they have chosen to employ it. Their responsibility is not to the court, but to the people, whose agents they were,.for this unwise, unfair and arbitrary exercise of the power of legislation confided to them. In its own sphere, the legislature is supreme, except when restricted by the constitution of this State or of the United States. 9 R. 411; 9 An. 562; 11 An. 308, 338, 370; 12 An. 169, 554. See also 16 Wal. 36.
Now, what clause of these constitutions has been violated in thecase at bar? Is the bill of rights : all persons “shall enjoy the same civil, political and public rights and privileges, and be subject to the same pains and penalties,” in any manner invaded ? Is “life, liberty, or the pursuit of happiness” of any person in the city of New Orleans, assailed by the statute, granting the sole and exclusive privilege to plaintiff to operate gas works in New Orleans for fifty years ? The right to operate gas works and to illuminate a city, is not an ancient or usual occupation of citizens generally. No one has the right to dig up the streets and’ lay down gas pipes, erect lamp posts and carry on the business of lighting the streets and the houses of the city of New Orleans, without special authority from the sovereign. It is a franchise belonging to the State and in the exercise of the police power, the State could carry on the business itself, or select one or several agents to do so. And, as the legislature had the right in 1835, to grant the sole and exclusive privilege to the defendant company to make and vend gas in New Orleans for forty years, the legislature of 1870, had the same power to confer on the plaintiff the same privilege for fifty years from the termination of the grant to defendant. We therefore conclude that the grant of the monopoly complained of, does not violate the constitution and is valid. 22 An. 553; 16 Wallace, 36; 23 An. 743. See also Corfield vs. Coryell, 4 Wash. C. C. Rep. page 380; also, Dillon on corporations, sections 546, 549.
We come now to consider the rights of the intervenors. Without going into details, we conclude that the State intervening, not to setup some separate right of its own, but solely for the purpose of upholding the rights of the plaintiff against the defendant, in regard to a franchise granted by itself, has no interest whatever in the controversy, and the court below did not err in dismissing its intervention.
In regard to the intervention of the city of New Orleans, we will remark, that the right reserved by the State for it to become the purchaser of the gas works, fixtures, machines, pipes etc., atthe expiration of the charter of the defendant, was not such a vested right that the State could not withdraw or recall, without contravening that provision of the constitution of the United States, prohibiting a State from impairing the obligations of a contract. Conceding that the authority given *148 to the city, if she saw fit, at the expiration of defendant’s charter, to purchase the gas works, by implication conferred authority to operate said works, the State had the right to recall or withdraw the authority, as it did in the act of 1870, before the time for using the authority arrived. And the grant of the sole and exclusive privilege to plaintiff to make and vend gas, is utterly repugnant to the right of any other person or corporation to make and vend gas in New Orleans. And, this grant by implication, revoked or recalled any previous authority given the city to buy the gas works of the defendant on the first of April, 1875, for the purpose of making and vending gas.
The powers and privileges granted by the State to the city of New Orleans, and other political corporations used in the administration of government, may be recalled or modified by the legislature at pleasure. And in doing so they violate no contract protected by the constitution of the United States. Impressed with this view of the law, this court in 1850, in the case of the police jury of Bossier parish vs. corporation of Shreveport, 5 An. 664, decided that “ the act of twentieth of March, 1839, incorporating the town of Shreveport, and giving the municipal authorities exclusive right to establish ferries across Red river, did not create a contract or vested rights in that corporation which the legislature could not constitutionally change or annul.”
And this doctrine was reaffirmed by this court in the case of Marks vs. The Town of Donaldsonville, 24 An. 242. See also, the case of Layton vs. City of New Orleans, 12 An. 515. Dillon on Corp. 2d ed. 37, 40; 11 Peters, 539; 3 How, 534. We therefore conclude that the intervention of the city of New Orleans can not be maintained.
It is therefore ordered that the judgement herein be set aside and annulled and it is decreed, that the plaintiff, the Crescent City Gaslight Company, has the sole and exclusive right to make and sell illuminating gas in the city of New Orleans, for fifty years from first April, 1875 ; that the act of March 1, I860, extending the charter of the defendant, the New Orleans Gaslight Company, from first April, 1875, until first April, 1895, is unconstitutional and void; and that the defendant be injoined and inhibited from settingup any claim thereunder or from attempting to carry on the operation of gas works or the business of making and vending gas after first April, 1875, or from, in any manner, impeding the plaintiff: from the full enjoyment of its franchises, rights, and privileges, arising under the acts of April, twenty, 1870, and July 10, 1873. It is further ordered, that the intervention of the State be dismissed with costs, and the demand of the intervenor, the city of New Orleans, be rejected with costs of its intervention. It is further ordered, that the defendant pay costs of both courts.
Howell, J. Absent.