SKRAINKA, Respondent, *v.* ALLEN, Appellant.

June 10, 1876.

1. A. filed a plat dedicating to public use the streets shown thereon, so far as they were on his own land. He subsequently acquired that part of the land shown on the plat which belonged to others when the plat was filed, and thereafter returned for taxation so much of it as was not in the streets shown in the plat, describing it as bounded by these streets, and in such manner as to render his description unintelligible except by reference to this plat. *Held,* that this was evidence tending to show a dedication good on general legal principles.

2. (On application for an appeal.) On authority of *Haegele* v. *Mallinckrodt,* held, that the title to real estate is not involved in this action, and an appeal to the Supreme Court will not lie.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*Horatio D. Wood,* for appellant, cited: Gen. Stat., ch. 44, sec. 1; Ang. on Highw., sec. 134; Dill. on Mun. Corp., sec. 498; Holdane *v.* Trustees, etc., 21 N. Y. 479; Woodyer *v.* Hadden, 5 Taunt. 125; McLaughlin *v.* Stevens, 18 Ohio, 94; Becker *v.* City of St. Charles, 37 Mo. 13; Missouri Institute of the Blind *v.* How, 27 Mo. 211; Brinck *v.* Collier, 56 Mo. 160; Kelly *v.* City of Chicago, 48 Ill. 388; Irwin *v.* Dixon, 9 How. 30; Banaclough *v.* Johnson, 8 B. & Ad. 103; Lee *v.* Lake, 14 Mich. 12; Detroit *v.* Detroit & Milwaukee R. R. Co., 22 Mich. 209; Proctor *v.* City of Lewiston, 25 Ill. 153; Cape Girardeau & Bloomfield M. & G. R. Co. *v.* Renfroe, 58 Mo. 265; Wag. Stat. 1168, sec. 14;

Fisher v. City of St. Louis, 44 Mo. 482; Rees v. City of Chicago, 38 Ill. 322; Hyde's Admr. v. Jamaica, 2 Dougl. (Mich.) 257, 285; 2 Greenl. on Ev., sec. 662; Parsons v. Trustees, etc., 44 Ga. 529.

R. E. Rombauer, for respondent, cited: Brown v. Manning, 6 Ohio, 298–303; Bitting v. Waterman's Appeal, 17 Pa. St. 211, 216; City of Cincinnati v. The Lessee of White, 6 Pet. 431; Wider v. City of St. Paul, 12 Minn. 192; Mankato v. Willard, 13 Minn. 13; Commonwealth v. Moltz, 10 Barr, 530; Alvord v. Ashley, 17 Ill. 363; Banks v. Ogden, 2 Wall. 57; Missouri Institute of the Blind v. How, 27 Mo. 211.

GANTT, P. J., delivered the opinion of the court.

We adopt in this case the statement made by Mr. Wood, of counsel for appellant, as follows:

This is an action upon certain tax-bills issued for the construction of Arrow or Shenandoah street, from Summer street to Second Carondelet avenue.

The defense is that said portion of Arrow street was never condemned by the public authorities, or dedicated to public use.

The reply sets up that, anterior to the passage of the ordinance under which the work was done, a dedication of the street as a public highway had been made by appellant.

The case was tried upon the following agreed statement of facts, subject to the written objection of either party, as to the relevancy of any part of said agreed statement:

1. That the defendant had, long anterior to the filing of the plat hereinafter referred to, dedicated to public use that part of Arrow street on said plat which lies east of Summer street; that said dedication was to the width of sixty feet; that the exact location of said Arrow street, east of Summer street, is correctly shown on said plat, and that the lines—forming respectively the northern boundary of block 802 and the southern boundary of blocks 786 and 787, as shown on said plat—are a continuation respectively of the

[*a b c* represents triangular tract of land purchased on May 8, 1871, by appellant from Charless and McPheeters.]

southern and northern line of Arrow street, east of Summer street, and that Arrow and Shenandoah streets are one and the same street, known by different names.

2. That, on June 21, 1869, the defendant caused to be made and filed in the county recorder's office of St. Louis county a plat of his additions to the city of St. Louis, which was acknowledged by defendant in due form of law, and which had inscribed on it the following dedication :

" This plat is filed for the purpose of connecting in one plat all my additions heretofore made, lying between Carondelet avenue and Second Carondelet avenue, in the city of St. Louis, and also for the purpose of relinquishing to public use any and all streets and alleys, as indicated on the plat, which have not been *heretofore* relinquished on the property and addition represented.

" Witness my hand and seal this 21st day of June, 1869.

[Signed]                          " THOMAS ALLEN.    [L. S.]"

3. That a copy of such parts of " said plat as plaintiff deems material to the issues " is below set out.

The letters *a b c* and *e f d* not being contained on the original plat, but inserted on this copy for the sake of reference.   It being understood that the original plat may be given in evidence, and in case of any variance between the original plat and the copy of the part thereof herein inserted, such original plat shall govern.

4. That the line *a c* represents the line of a survey, and that the triangular tract of land inclosed within the points and lines *a b c* was, anterior and up to May 8, 1871, owned by other parties than the defendant ; but that all land represented on said plat, and lying south of the line *a c*, as far as the same was not previously dedicated to public use, was, on June 21, 1869, owned by defendant.

5. That the defendant has at no time since the year 1864 returned for taxation any property lying between the line *a e* and the northern boundary line of block 802, as shown by said plat, with the exception of the small triangular tract

bounded by the points and lines *e d f*, as shown on said plat, and that, in the tax returns made by his agents, and partly by himself, since 1864 up to 1873, he bounded his property, lying in the west half of block 802, on the north by Arrow street or Shenandoah street, and returned for taxation only the property owned in block 802, as bounded by the limits as said block, and that the most northern lot in the east half of block 802 fronts on Summer street.

6. That the defendant, in his tax returns made in September, 1871, and ever since, included only such parts of blocks 787 and 786 as are inclosed by the lines of said blocks, as shown on said plat—omitting all parts thereof covered by Summer street, Elizabeth street, and Arrow street, as such streets are shown on said plat, as well as the alleys running through block 787, and that no property was assessed to, or taxed against, defendant, since the year 1871, lying north of the line *a e*, excepting such as is inclosed within the boundaries of blocks 786, 787, and 788, as shown on said plat, exclusive of the alleys of said blocks.

7. Relates to the ordinance under which the work was done, passed on July 10, 1872.

8. Relates to the making of the contract, the doing of the work, and the receipt of the tax-bills sued upon.

9. That defendant is a resident of the city of St. Louis; that no notice was given to plaintiff by any one, until after the completion of the work, of defendant's claim; that said Arrow or Shenandoah street, between Summer street and Second Carondelet avenue, was not a public highway, but was defendant's private property.

10. The work and materials furnished by plaintiff were of uniform character and value along the entire length of said Arrow street, between Summer street and Second Carondelet avenue, as the city claims said street to be, and the lots of defendant, adjoining thereon, have been charged in said special tax-bills according to their frontage on said street as the city claims it.

11. That the point "*f*," where the line *a e* intersects the southern boundary line of block 787 (as shown on the plat hereinabove stated), is nearer to the point of intersection of said southern line of the block with the eastern line of the alley next west than to the point of intersection of said southern line of the block with the west line of Summer street; and that more that one-half of the area of that part of Arrow or Shenandoah street as the city claims it, which lies directly north of block 802, lies south of the line *a e* (as shown on said plat).

12. That Arrow or Shenandoah street runs east and west, and Summer street north and south.

The following points are inserted in the agreed statement of facts on behalf of the defendant:

13. That neither the defendant, nor those under whom he claims the land occupied by that portion of the street in controversy, ever conveyed by deed to the city or county any portion of said street; and that no portion of said street has ever been condemned for public use.

14. That a ravine run across Arrow street, now called Shenandoah street, from north to south, at a point near Summer street, and that, anterior to the improvement of the street by plaintiff, it had never been used by the public as a highway, being impassable.

15. That no improvements were made upon said street, and no action was taken by the municipal authorities with reference to the improvement of said street, prior to the passage of the ordinance mentioned in plaintiff's petition.

16. That defendant was absent from the city, and had no knowledge that plaintiff was working upon the street and making the improvements sued for, until some time after the work was completed; nor had his agent any such knowledge.

17. That on May 8, 1871, Charlotte T. Charless, Mc-Pheeters, and others conveyed to the defendant the triangular-shaped tract of land included in the lines *a b c*, as

shown in the plat embodied in the statement, a certified copy of which conveyance is hereunto attached and marked Exhibit "B."

18. That the triangular tract of land included within the lines *a b c*, as shown upon the plat embodied in the statement, and as also indicated upon the plat recorded in plat-book 8, page 74, filed on June 21, 1869, contains one and seventeen one-hundredths acres ; and that prior to the purchase of the said tract by defendant, and until the year 1872, taxes were paid upon the whole of said tract, and said tract was assessed in acres.

19. That, by plat recorded in plat-book 1, record-book 1, page 16, and filed by defendant, Arrow street is dedicated from the west side of Summer street, eastwardly sixty feet wide, for a distance of 874 feet and three inches, to the eastern boundary line of defendant's land.

20. That the line *a c*, as shown on the plat embodied in the statement, intersects the line of the sidewalk as now constructed, lying north of block 802, at the northwest corner of said block.

21. It is admitted that the defendant would state under oath, and that he now states, that, when he filed the plat recorded in plat-book 8, page 74, a portion of which said plat is hereinbefore embodied in this statement, he represented Arrow street as extending from Summer street to Second Carondelet avenue, and across the one and seventeen one-hundredths acre tract, then belonging to Charless and McPheeters, for the purpose of showing how he desired to have said street dedicated at some future time.

22. That it is customary at the assessor's office to have the description of the property as returned correspond with the plats on file in that office ; but parties may, if they desire so to do, return their property otherwise. That the returns for taxes, in 1872, of the property owned by Mr. Allen was made by his agent, Mr. Stephens, and, by an arrangement with one Robertson, a clerk in the assessor's

office, said return was made so as to show the number of
front feet on each boundary as indicated on plats of city
blocks 786 and 787 on file in that office, and that in said
returns said Stephens described the property in blocks 786
and 787, which defendant Allen had recently bought from
Charless and McPheeters respectively, as property bounded
by Arrow street, Second Carondelet avenue, and Elizabeth
street; and Elizabeth street, Arrow street, and alley.

And thereupon in accordance with the stipulation in said
agreement contained, the defendant filed his objections in
writing, as follows:

The defendant, by counsel, objects to the following parts
of the agreed statements of facts filed herein, which were
inserted in said statement by plaintiff, for the reason that
the same are irrelevant and immaterial, and prays the judg-
ment of the court on such objections.

1. To point second, showing the plat filed by defendant on
June 21, 1869, defendant not being then the owner.

2. To point fifth, showing the property returned by
defendant for taxation, and the boundaries of the property.

3. To point sixth, showing the property the defendant has
returned in blocks 786 and 787, and what he has omitted to
return within the triangle *a b c.*

4. To point seventh, showing the ordinance under which the
work was done (it appearing that the City Council had no
power to pass said ordinance, the land not having been
dedicated).

5. To point eighth, showing the tax-bills sued on, for the
reasons specified in the foregoing objection ("4").

6. To point ninth, showing that the defendant is a citizen
of St. Louis, and that plaintiff had no notice of his owner-
ship.

7. To point eleventh, showing location of the point "*f*,"
and what portion of Arrow street lies south of the line *a e.*

Which objections were by the court overruled, to which
ruling of the court the defendant then and there excepted.

Thereupon the counsel for appellant insists that:

1. There was no statutory dedication of Shenandoah or Arrow street, west of Summer street. Gen. Stat., sec. 1, ch. 44; Ang. on Highw. 134; Dill. on Mun. Corp. 498; *Holdane* v. *Trustees, etc.*, 21 N. Y. 479; *Woodyer* et al. v. *Hadden*, 5 Taunt. 125; *McLaughlin* v. *Stevens*, 18 Ohio, 94.

2. Nor can a dedication at common law be claimed. See, besides cases above cited, *Becker* v. *City of St. Charles*, 37 Mo. 13; *Missouri Institute of the Blind* v. *How*, 27 Mo. 211; *Brinck* v. *Collier*, 56 Mo. 160; *Kelly* v. *City of Chicago*, 48 Ill. 388; *Irwin* v. *Dixon*, 9 How. 30; *Banaclough* v. *Johnson*, 8 B. & Ad. 103; *Lee* v. *Lake*, 14 Mich. 12; *City of Detroit* v. *Detroit & Milwaukee R. R. Co.*, 22 Mich. 209; *Proctor* v. *Lewis*, 25 Ill. 153.

3. The subsequent purchase by Mr. Allen of the triangular tract, containing one and seventeen one-hundredths acres, after filing the plat recorded in 1869, did not operate by way of estoppel, or otherwise, to dedicate the portion of the street north of the line *a c.*

4. There was no estoppel *in pais*. *Cape Girardeau & Bloomfield M. & G. R. Co.* v. *Renfroe*, 58 Mo. 265; *Fisher* v. *City of St. Louis*, 44 Mo. 482, and cases before cited.

5. Even though the acts of appellant manifested an unequivocal intention to dedicate his property to public use, yet, to constitute a dedication, acceptance by the public must be shown. *Becker* v. *City of St. Charles*, 37 Mo. 13; *Brinck* v. *Collier*, 56 Mo. 161; *Rees* v. *City of Chicago*, 38 Ill. 322; *Lee* v. *Lake*, 14 Mich. 12; *Parsons* v. *Trustees, etc.*, 44 Ga. 529; *Hyde's Admr.* v. *Jamaica*, 2 Dougl. (Mich.) 257; 2 Greenl. on Ev. 662, and cases before cited.

On the other hand, the counsel for respondent submits that the judgment of the Circuit Court was warranted by the evidence of, first, the dedication of Arrow or Shenandoah street shown by the plat filed in 1869; second, the facts under which an estoppel *in pais* is irresistibly inferred against Allen.

It is obvious that, if respondent's position be maintainable, the judgment must stand, and the examination will be simplified by devoting our attention first to these two propositions:

1. Was there a dedication of Arrow street by the plat filed in 1869? That is to say, did Mr. Allen, by filing that plat, dedicate land not then belonging to, but subsequently acquired by, him?

As to the land belonging to him at the time, he certainly manifested by all modes possible for him his intention and purpose that Arrow street, as there delineated, should be a public highway. On June 21, 1869, he acknowledged the plat of his addition. The object of this act was declared to be twofold: First, it had in view the connecting in one plat of all the additions theretofore made by appellant of land between First and Second Carondelet avenues; and, second, to relinquish to public use any and all streets and alleys, as indicated on the plat, not previously relinquished.

Unless the apparent purpose of relinquishing to the public at once, and as of the date of June 21, 1869, so much of Arrow street, west of Summer street, as belonged to him be controlled by some rule of interpretation which we are not at liberty to disregard, we should be of opinion that to this extent, at least, there was a dedication of Arrow street as of that day. No such rule has been pointed out. The cases cited by appellant's counsel, in support of the theory of the existence of such a rule, we cannot accept as demonstrating it. These cases are *Woodyer* et al. v. *Hadden*, 5 Taunt. 125; *Holdane* v. *Trustees, etc.*, 21 N. Y. 479.

In the first of these cases the question of fact, whether there had been a dedication of land to public use, was referred to a jury, which found the fact to be that no such dedication had been made. This verdict the Court of Common Pleas refused to disturb. There were circumstances in the case which negatived intention to dedicate a piece of

land as a public street. The only permitted use of it had been by those who owned the land through which it was laid out; and it scrupulously stopped at the line of defendant's land. In the language of Sir James Mansfield, Ch. J., it was a "*cul de sac.*" This decision cannot be relied on for the proposition asserted by appellant.

In the case in 21 N. Y., also, the question was of the effect of certain acts of the proprietor to work a dedication of a piece of land to public use. If it were so dedicated at all, it was dedicated as a *street*, and it was not a street, but a *cul de sac.* The matter of fact was tried by a referee, who found that the land in question communicated with a public road at one end and was closed at the other, and that there could be no presumption of the dedication of a *cul de sac* as a highway.

In both these cases there was no such thing as a statutory dedication. The question was whether there had been a dedication good at common law.

The counsel for appellant also cites the case of *McLaughlin* v. *Stevens*, 18 Ohio, 94, 97. We do not see that he is aided by this decision. There the plat of the town of Wellsville showed a street, called Water street, sixty-six feet in width. The actual distance of the northern line of Water street from the Ohio river was more than 200 feet. The southern line was nearly 150 feet from the river; but the defendant's case depended upon the extension of Water street to the river, by reason of the dedication operated by the plat of the town made by Wells.

The court was of opinion that, if only the northern line of Water street had been shown by the plat, and no line for the southern boundary had been laid down between the northern line and the river-bank, there would have been much force in the argument; but, as matters stood, the plat was decisive of the controversy, negativing, as it did, any presumption of an intention to extend Water street beyond

the southern line of it indicated on the plat, and at a distance of sixty-six feet from its northern line.

We are, therefore, of opinion that, to the extent of the ownership of Allen, Arrow street was dedicated to public use by the plat filed June 21, 1869. If, instead of the line dividing his land from the northern proprietor being oblique to the lines of Arrow street, it had been parallel with, and intermediate between, its north and south lines, no one, we imagine, would have been at liberty to doubt that he thereby declared that, so far as he possessed the power, he relinquished to the use of the public all the land between the north and south lines of Arrow street, the east line of Second Carondelet avenue, and the west line of Carondelet avenue. We think the circumstance of the obliquity of the line of division in no respect changes the character of the act. If any inference is to be drawn from the designation of that line on the plat, we think that its being a dotted, and not a full, line was evincive of Mr. Allen's view that it was, at most, only a temporary obstruction to a street, the complete establishment and opening of which he regarded as very important to the desirableness of his addition.

2. If, in 1869, Mr. Allen had held the inchoate title to the land purchased by him in May, 1871, from Charless and McPheeters, we should have no difficulty in coming to the conclusion that he contemplated then, and declared his intention, to dedicate that also to public use. But no case to which we have been referred—not even that of *City of Cincinnati* v. *White*, 6 Pet. 431 and following—goes so far as to say that an intention, however unequivocally expressed, respecting the public use of a tract, M, of which A is the proprietor, shall conclude him in respect of an adjoining tract, W, which at that time is held by a stranger, but which he subsequently acquires. Something more than subsequent acquisition will be needed to conclude A. No doubt what he has previously said or done, if not qualified

·or retracted, will be remembered against him, and will be properly construed as being repeated or ratified by him, when the change of circumstances occurs which gives him power of disposition over the tract N. We will not dwell ·on this consideration, for it must be plain that if Mr. Allen had declared in his dedication of 1869 his intention of .acquiring the tract *a b c*, and thus confirming his plat— which would, perhaps, have been the most forcible and une-·quivocal mode of committing himself by the subsequent .acquisition—he could hardly be heard, after acquiring the triangular piece of land and permitting any appreciable .interval of silence to elapse, to deny the dedication of the .street as indicated by the old plat. It is not meant that he did any such unequivocal act, or said any such unequivocal words, but we think he did what had a tendency, more or less strong, to indicate this intention; the Circuit Court has found that he did so intend, and, if we are correct in thinking that such was the tendency of what he did, the judgment of the Circuit Court must stand.

We have said that we consider his conduct as leading to the conclusion that he did so intend; and, indeed, we do not think it capable of any other interpretation. He had .an interest in making that part of the indicated course of Ann street lying north of the line *a f* a public highway. To make it such, connected his addition with Second Carondelet .avenue, and brought into market the northern tier of lots in block 802, while it also naturally tended to increase the value of the lots to the east of Summer street. But there was another reason why it was advantageous to him to have this portion of Arrow street not regarded as private prop-·erty, and that was the wish to escape taxation. It is true that the value of that part of the triangular piece *a b c* which lies north of the north line of Arrow street would probably be much increased by the complete opening of the street, and thus the burden of taxation would be increased, instead of lessened; but, forasmuch as a proprietor gains more by increasing the value of his land than he loses by

the increased consequent taxation, we do not consider that the argument last suggested is impaired. We consider it undeniable that a proprietor laying off his land into an addition to the city desires to promote its salability; and it is plainly his interest to diminish, as far as can be honestly done, the burdens of taxation upon it. Looking, then, to what Mr. Allen did in respect of this property after May 8, 1871, we find that he has not only *not claimed*, but has positively *disclaimed*, ownership over any part of Arrow street since 1871. At the lowest, this evidence tends to the conclusion that Mr. Allen intended and desired to be understood, not only by possible purchasers of lots in his addition, but by the State, city, and county, that Arrow street, was relinquished to the public as a highway after his acquisition of the triangular piece of land *a b c*, which enabled him to give effect to the intention previously declared.

In the case of *Gamble* v. *City of St. Louis*, 12 Mo. 617, the Supreme Court of Missouri considered acts of somewhat similar nature to be conclusive evidence of a dedication to public use. There have been many decisions to the same effect since. In the most of these cases the continued use of the property according to the dedication has been a controlling element, but it is not a necessary one if the owner has done what is wholly inconsistent with the supposition that the property is still the subject of private ownership—if, in short, he has profited by inducing others to accept as true the hypothesis which he now desires to disprove, but by the disproof of which they would be damnified.

All the judges concurring, the judgment of the Circuit Court is affirmed.

GANTT, P. J., delivered the opinion of the court, on application for an appeal to the Supreme Court.

This application is made on the ground that the title to real estate is involved in the case. The Constitution, (sec. 12, Art. 6), gives an appeal to the Supreme Court "in

cases involving title to real estate;" and whether this case comes within the designated class is the question presented for our determination.

The counsel for appellant argues earnestly and ingeniously in favor of the affirmative of this question; but the counsel for respondent refers us to a ruling of the Supreme Court upon the matter which seems decisive. In the case of *Haegele* v. *Mallinckrodt* an appeal was taken in December, 1873, from a judgment of the St. Louis Circuit Court at general term. The record was lodged in the office of the clerk of the Supreme Court on February 28, 1874. On January 4, 1876, a motion was filed asking the Supreme Court to transfer the cause to the Court of Appeals, under section 19 of Article 6 of the Constitution of Missouri, which provides that "all cases pending in the Supreme Court, at the time of the adoption of this Constitution, which, by its terms, would come within the final appellate jurisdiction of the St. Louis Court of Appeals," shall be transferred to, and determined by, the St. Louis Court of Appeals. On January 18, 1876, the Supreme Court made the order prayed for—thus deciding that, in the case of *Haegele* v. *Mallinckrodt*, the St. Louis Court of Appeals had final jurisdiction. If, in that case, which has not yet been heard, either party should pray an appeal from our decision to the Supreme Court of Missouri, we should, if we granted it, be directly in conflict with the Supreme Court; and this, of course, is a position we are not warranted in taking, and which we will be careful not to occupy. But we cannot distinguish between the nature of the case at bar and that of *Haegele* v. *Mallinckrodt*. In each case the action is on a special tax-bill; in each case the question is whether the spot on which the work sued for was done had been dedicated as a public street. The Supreme Court has held that this court has final jurisdiction of one of these cases—that is to say, that no appeal lies to the Supreme Court from such judgment as we may render in the cause.

And, carefully abstaining from all examination for ourselves of the question presented by the application, we conform to the views expressed by the Supreme Court of Missouri.

All the judges concurring, the motion fo an appeal is overruled.