EDWARD BREDELL ET AL., Respondents, *v.* M. ALEXANDER ET AL., Appellants.

### December 2, 1879.

1. In an action under the statute to quiet title, a judgment that the defendant bring suit within a certain time or be forever barred, is a "final judgment," from which an appeal will lie.

2. In such a proceeding the defendant may be compelled to assert any present adverse claim, whether legal or equitable, which may be enforced by an appropriate remedy.

3. An answer which shows that the defendants claim that the plaintiffs, as trustees in possession of certain church-property, are, in violation of their trust, holding this property of the church for certain seceding members thereof, and are offering it for sale to defray the expenses of building another house of worship for such members, shows such a claim as ought, under the statute, to be asserted or declared to be barred for failure to do so.

4. An averment of possession is admitted by an answer which simply argues against such possession; nor does the general statement that "all allegations, except as before admitted, are denied," render such an ambiguous denial any the less an admission.

5. In pleading, all facts must be directly, distinctly, and definitely averred, or if traversed, unequivocally denied, so that nothing will be left to conjecture or inference.

APPEAL from the St. Louis Circuit Court.

*Affirmed.*

McCOMAS & McKEIGHAN, for the appellants : The answer, taken as a whole, denies the plaintiffs' possession : without actual possession the plaintiffs cannot maintain this action. — *Von Phul* v. *Penn*, 31 Mo. 333 ; *Rutherford* v. *Ulman*, 42 Mo. 216. The statute only applies to such cases as can be brought by the defendant, and cannot be brought by the plaintiff by reason of the fact of his possession, and refers exclusively to possessory actions. — *Webb* v. *Donaldson*, 60 Mo. 395. Under the pleadings, the plaintiffs have no " estate " to which the defendants can " claim " an adverse title. — *Reformed Church* v. *Verder*, 4 Wend. 497 ; 2 Perry on Tr., sect. 732.

HITCHCOCK, LUBKE & PLAYER, for the respondents : The answer expressly admits the allegation of the petition to be true : that in 1864 the premises in question were conveyed to the petitioners as trustees ; and it is not suggested that petitioners have since then parted with or been deprived of the legal title thus vested in them. — *Peabody* v. *Eastern Methodist Soc.*, 5 Allen, 240 ; 2 Perry on Tr., sect. 730. The use to which, as averred in the answer, said premises were conveyed in 1864 to the petitioners was a charitable use, and one which the Statute of Uses would not execute in the *cestuis que use.* — 1 Perry on Tr., sect. 66 ; *Walter* v. *Walter*, 48 Mo. 145 ; Bispham's Eq., sects. 116, 122, 131 ; 2 Perry on Tr., sect. 687 ; 2 Story's Eq. Jur., sects. 1165, 1169. A claim to an equitable interest such as is asserted in this answer is within the statute. — *Benoist* v. *Murrin*, 47 Mo. 537.

HAYDEN, J., delivered the opinion of the court.

This is a proceeding brought under the sections of the Practice Act which provide that any person in possession of real property, claiming a certain estate therein, may file a petition averring that he is credibly informed and believes that the defendant " makes some claim adverse to the estate of the petitioner, and praying that he may be summoned to show cause why he should not bring an action to try the alleged title (if any) ;" that if the defendant claims title, " he shall by answer show cause why he should not be required to bring an action and try such title ; and that the court shall make such judgment or order respecting the bringing and prosecuting of such action as may seem just." Wag. Stats. 1022, sects. 53, 54. The defendant appeared and answered, and upon the answer the court below, on January 6, 1879, upon motion of the plaintiffs, ordered that the defendants, on or before the first day of May, 1879, bring suit to try the title, and, in default, be barred from claiming any adverse right in or title to the premises. From this order the defendants appealed.

A preliminary question raised is whether this order was such a " final judgment or decision " that an appeal lies. We think it is such, for the reason that it settles the issues of this action, which the Legislature has seen fit to make a suit by itself.    The fact that in another suit — namely, that to try the title — further issues may arise, does not prevent this order or judgment from being final.    So, the mere possibility that in a suit of this kind there may be a default, or the defendant may disobey the order, and so the way be open, through the neglect or misconduct of a party, for a judgment of estoppel, which would conclude the whole controversy, cannot destroy the right of a contesting defendant as to whom the issues of this proceeding have been adversely decided, and who must appeal on the decision of such issues, or never.    Such a defendant might, indeed, disobey the order ; but there can be no compulsion upon him to do so, and thereby sacrifice a right.    He is not obliged to adjust in one action a controversy of which the law makes two.    In each of the suits the plaintiff might have an appeal ; why should the defendant have an appeal in only one ?

The plaintiffs claim to be seized in fee, and their petition follows the statute.    The answer is too long to be set out, and some of its allegations amount to arguments.    Its substance is, that the property, in 1864, was conveyed to the plaintiffs in trust that there should be built on it a church, to be known as the Sixteenth Street Presbyterian Church, to be used as a place of worship by a congregation organized under the jurisdiction of the then Presbytery of St. Louis and Synod of Missouri ; that there was afterwards a dispute as to the ecclesiastical connection of the church, and that the plaintiffs' party insisted upon adhering to a schismatically organized presbytery and synod, while the Sixteenth Street Church, as represented by the defendants and their part of the congregation, adhered to the regular and lawful presbytery and synod ; that the plaintiff party,

who are seceders and a minority, are offering to sell the property and leave the defendant party no place in which to worship; that the plaintiffs claim that they hold the property exclusively for the seceding party, and that this constitutes the church; while the non-seceders insist that the plaintiffs hold the property in trust for that part of the congregation which keeps up its regular ecclesiastical connection.

It is true that the present action is peculiar, yet what the defendants claim should be set forth as facts, not argumentatively; nor are they relieved from the obligation of conforming their answer to the rules of pleading. They are bound to tender issues directly; and they cannot increase their rights by the ambiguity of their denials. The direct averment of the petition that the plaintiffs are in possession is susceptible of a plain denial, and if not so denied, is admitted. An argumentative denial is indirectly an admission, since it raises against the pleader the inference that he was unable to deny as the Practice Act requires. Such a denial is forbidden by two rules of pleading: First, that facts must be alleged by direct averment; second, that they must be alleged with definiteness, so that nothing is left for inference. That the congregation known as the Sixteenth Street Presbyterian Church, as organized, have up to the present time " used and occupied said premises," must be taken in the connection in which this clause is used. But however taken, and if the defendants' own construction is put upon it, it is but the foundation of an argument, and no denial of the physical fact of the plaintiffs' possession, but a virtual admission of it. This admission the defendants cannot get rid of by resorting to the improper practice of winding up an answer — whose specific averments, if they mean anything, mean special joinders of issue — with the vague statement, applicable to nothing in particular, that the defendants deny all allegations except as before

admitted.   The vice of this method is well illustrated in the present case, where the defendants make a long argument to show what the issues are, when the theory of the Practice Act is that the legal mind shall at once perceive the issues from a mere inspection of the pleadings.   But even tried by the test, — which in good pleading need never be resorted to, — what is the meaning of the answer as a whole? — the possession is certainly not in issue, but, as will appear from what is said upon the other points, is admitted.

It appears from the answer that the plaintiffs accepted the trust and held the property for a voluntary association of persons, that they might have a place of religious worship and resort to it as usual for such purpose.   The trustees continued to so hold the property, — nothing to the contrary is averred, — and this body of people, who never took a corporate form, continued to resort to the church as a place of religious worship.   It necessarily follows from the answer that the body of persons for whose use the trust was created was fluctuating, and would continue to be so.   It was a religious congregation, whose members might be many or few.   Except as members of a particular church, professing certain doctrines on the subject of religion, and having certain ecclesiastical connections, — which in this case were the source of the strife, — it does not appear that even those who were members at any given time have had anything in common which all natural persons have not had.   Thus, the doctrines of equity, unaffected by the Statute of Uses, have a legitimate sphere of operation, and the purpose of the grant will be carried out by the preservation of the trust.   The trust, as the answer shows, is of the class of charitable trusts ; and it is a peculiarity of such trusts that equity will hold the gifts to be good when, if they were for ordinary purposes, they would be considered void on account of the uncertainty of the persons for whose benefit they were intended.   Tudor's Ch.

Tr., pt. 1 ; 3 Washb. on Real Prop. *688 ; 2 Story's Eq. Jur., sect. 1169 ; *Shrewsbury* v. *Hornby*, 5 Hare, *406.

It is urged by the defendants that the facts pleaded in the answer do not constitute a claim adverse to the estate of the plaintiffs within the meaning of the statute, and that therefore the court below erred in adjudging that suit be brought. If we are to consider the claim of the defendants as actually made by them, — which must have its basis, if it has any, in the allegations of the answer, — the use was executed, and thus the congregation is the beneficiary, and the plaintiffs, the trustees, have no title, either in law or equity. Yet it is clear, from the facts of the answer, that the plaintiffs are in possession and claim that the legal estate is in them. We are not now to decide what is the estate of either party, but merely whether there is such a controversy as the statute has in view, and that the basis of this controversy exists. If the defendants think it a matter of serious contention that the use was executed in the congregation, they certainly cannot deny that they set up a claim adverse to the estate claimed by the petitioners, in the statutory sense.

But if, treating this as not seriously contended for by the defendants, we look directly to the allegations of the answer, we find that the defendants allege that those of the congregation whom, following the substance of the answer, we have for brevity called the seceding party, claim that the connection between the Sixteenth Street Presbyterian Church and the old presbytery and synod has been severed ; while the defendants and their party, as the answer shows, claim that the seceders from the old connection have abandoned the church and are about to sell the property in question, leaving the defendants' party " no place to meet and worship." The answer says that the plaintiffs claim that they hold the property in trust for such members as have abandoned the old connection, and further claim that these

members constitute the church in connection with the presbytery of 1866 ; while the defendants, who are members of the congregation, and the rest of the non-seceding party insist that " the petitioners hold, and ought to hold, in trust for the Sixteenth Street Presbyterian Church, and each and all of its members in connection with the Presbytery of St. Louis first herein mentioned, and as is provided in the deed of grant of said property to said church." This last description certainly excludes the seceding party ; since that party, according to the answer, is not " in connection with the Presbytery of St. Louis first herein mentioned." It is true that the defendants claim that the vote of January 10, 1877, could not sever the connection of the non-seceding party from the old presbytery, or sunder the relations of the church with the same ; but this does not do away with the fact that the opposite party adheres to the presbytery of 1866, and that the answer is based on their secession. In fact, it is admitted that the " pastor and those voting upon said proposition might leave said church and go whithersoever it pleased them to go ; " but it is alleged that they had no power to sever the connection of the defendants from the church and the old presbytery. Here is a direct antagonism between the holding of the plaintiffs and the claim set up by the defendants and their party. Not only do the defendants claim that the plaintiffs are violating their trust in refusing to hold the property for those who have not seceded, but who adhere to the old connection, but the trustees ( the defendants, in effect, say) claim to hold, and are holding, the property exclusively for those persons who have formed a new connection and abandoned the congregation. It is further said that the seceders are now engaged in building two other churches in St. Louis, to which they intend to remove, and that they now claim the right to sell, and are offering so sell the church property here in question to defray the expenses of such building, intending

thereby to leave the non-seceding party no place where they can meet and worship.

It is plain that the "some claim adverse to the estate of the petitioner," within the meaning of the statute, need not be such a claim as would be appropriately tried by ejectment; nor do the remarks in *Webb* v. *Donaldson*, 60 Mo. 394, so imply, since they were made in reference to the facts there existing. See *Benoist* v. *Murrin*, 47 Mo. 537. There are no words in the statute thus limiting its scope, and to insert such words would deprive the statute of a great part of its value. Such claims as may be asserted in a court of equity, by remedies known to that court, as well as those peculiar to a court of law, are included. The security and peace in respect to landed property, which it is the object of the statute to give, can result only by compelling the assertion, in a legal form, of claims adverse to the estate of the plaintiffs, whether those claims are such as would be prosecuted on the law or equity side of the court, provided they may be enforced by an appropriate remedy, and assert a present adverse interest. The defendants' account of their claim, as exhibited in the answer, shows that it is within the words and the meaning of the statute. The particular form of action in which such a claim should be asserted would depend upon which one, out of a variety of theories, the defendants chose ultimately to adopt; but that they have a claim which ought under the statute to be asserted in some form, or else to be disposed of by the appropriate judgment for want of a proceeding, would seem clear. It is only by refusing to give a beneficial statute its legitimate sphere of operation that we could hold otherwise.

The judgment is affirmed.     All the judges concur.