NORTHCUTT, *Plaintiff in Error*, v. EAGER *et al.*

Division One, January 28, 1896.

1. **Supreme Court**: JURISDICTION : COURTS OF APPEALS. The supreme court, when duly invoked, must finally determine the limits of the jurisdiction of the courts of appeals and of the supreme court.

2. ———: ———. The question of jurisdiction to act on a case "raises itself," and should be considered by the court whether suggested by counsel or not.

3. ———: SUIT TO QUIET TITLE : STATUTE. A statutory proceeding to quiet title (section 2092, R. S. 1889) falls within the jurisdiction of the supreme court, because it involves title to real estate.

4. ———: ———: POSSESSION. A suit to quiet title must be founded on actual possession, and the title will not be investigated in order to ascertain who is in constructive possession of the land involved in the suit.

5. ———: ———: JUDGMENT : ESTOPPEL. The effect of a judgment to quiet title is to estop defendant from afterwards claiming title adverse to plaintiff, unless defendant brings and maintains his action to try the title as ordered.

6. ———: ———: LIFE ESTATE : REMAINDER. A suit to quiet title can not (under *Webb v. Donaldson*, 60 Mo. 394) be maintained against one claiming only a remainder, who concedes title for life to the party in possession.

7. ———: ———: ADVERSE CLAIM. Any adverse claim, whether legal or equitable, that may be presently asserted by suit, may be foreclosed by a proceeding to quiet title.

8. **Statute**: JUDICIAL INTERPRETATION : SUBSEQUENT REENACTMENT. Where a statute is construed by a judicial opinion, duly published and generally known, and afterwards is reenacted in the same terms, the judicial construction is embodied in the reenactment.

9. ———: SUIT TO QUIET TITLE : STATUTE OF SISTER STATE. The statute in regard to quieting of title was transplanted from Massachusetts. The history of legislation in this state on that subject is given.

10. ———: ———: ———. Decisions in another state, construing the terms of a law which we have adopted, are only of argumentative force if rendered after the law was enacted in this state.

11. Supreme Court: JURISDICTION: CITY OF ST. LOUIS. Cases in which St. Louis City is a party are within the jurisdiction of the supreme court because that city is a "political subdivision" of the state; but a city within a county is not such a subdivision.

*Error to Boone Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

AFFIRMED.

*Odon Guitar* and *Gordon & Gordon* for plaintiff in error.

(1)   This proceeding was instituted with a full knowledge of the fact that this court had indirectly in several cases, and directly in at least one case ( *Webb v. Donaldson*, 60 Mo. 394) ruled against the interpretation sought to be given sections 2092, 2093, R. S. 1889, by plaintiff in error.   The only object of the statute in question was to enlarge the jurisdiction of our courts, so as to furnish relief in a large class of cases that were remediless under the old forms of procedure.   *Patterson v. McCamant*, 28 Mo. 210; *Marmaduke v. Railroad*, 30 Mo. 545; *Chamberlain v. Marshall*, 8 Fed. Rep. 398; *Joyce v. McAvoy*, 31 Cal. 274; *Castro v. Barry*, 21 Pac. Rep. 946, and cases hereinafter cited.   (2)   The federal courts in a large number of consistent, and well considered decisions, in expounding and applying similar, though no broader enactments of different states, have adhered unwaveringly to the positions taken in *Clark v. Smith*, 38 U. S. 194. *Holland v. Challen*, 110 U. S. 15; *Stark v. Starr*, 6 Wall. (Ore.) 402; *Grand Rapids v. Sparrow*, 36 Fed. Rep. (Mich.) 210; *Chamberlain v. Marshall*, 8 Fed. Rep. (Ohio) 298. (3) A reference to the decisions of the state courts where statutes of a like character have been adopted, will develop the same result.   By a line of able and consistent decisions, they

maintain the "enlarged jurisdiction" we contend for, "that a party in the lawful and actual possession of land claiming title thereto, has the right to have "any adverse claim, or title set up by another, tried and determined;" and that courts of law or equity under their enlarged jurisdiction, conferred by statutes like ours, have the power to try and determine the issue thus presented between the claimants. *Rhea v. Dick*, 34 Ohio St. 420; *Bogert v. Elizabeth*, 27 N. J. Eq. 568; *Nixon v. Walter*, 41 N. J. Eq. 103; *Curtis v. Sutter*, 15 Cal. 260; *Head v. Fordyce*, 17 Cal. 151; *Joyce v. McAvoy*, 31 Cal. 287; *People v. Carter*, 66 Cal. 551; *Horn v. Jones*, 28 Cal. 196; *Goldberg v. Taylor*, 2 Utah, 486; *Giltelenan v. Lemert*, 13 Kan. 476; *Giles v. Ortman*, 11 Kan. 59; *Brennan v. Bigelow*, 8 Kan. 496; *Eaton v. Giles*, 5 Kan. 24; *Lewis v. Soule*, 52 Iowa, 11; *Lees v. Whetmore*, 58 Iowa, 170. In construing legislative enactments of foreign countries or other states, it is the well settled practice to adopt the interpretation of the law, which the judicial tribunals of such states or foreign countries have given to it. *Skouten v. Wood*, 57 Mo. 380.

*Draffen & Williams* for defendants in error.

The court below properly refused to require defendants to institute an action against the plaintiff upon the claim of title set up by them. The answer expressly disclaims any right to the present possession of the land on defendant's part, and alleges that the plaintiff has in no manner interfered with their rights. The defendants have no ground of action against the plaintiff, and the court very properly declined to require them to sue. *Webb v. Donaldson*, 60 Mo. 394; *Colline, etc., Association v. Johnson*, 120 Mo. 299; *Northcutt v. Eager*, 51 Mo. App. 219; *Dyer v. Bannis-*

*ter,* 87 Mo. 134; *Bent v. Warren,* 30 Mo. App. 332; *Bredell v. Alexander,* 8 Mo. App. 110; *Von Phul v. Penn,* 31 Mo. 333; *Dyer v. Krackauer,* 14 Mo. App. 39.

BARCLAY, J.—This is a proceeding to quiet title as provided by section 2092 of the practice act.

Plaintiff, in her petition filed in 1892, alleges possession of a tract of land (described); that her estate "is one of bequest and inheritance;" that the land is worth $6,000; that she believes defendants make some claim adverse to the estate of plaintiff, wherefore she prays that they be summoned to show cause why they should not bring an action to try their alleged title.

The court made an order on defendants to show cause accordingly, which they did. The trial court adjudged it sufficient, and thereupon refused to require them to bring an action to try the title.

The cause shown was, in substance, that defendants did not dispute plaintiff's right to present possession of the property; that they claimed only a remainder after the life estate of plaintiff, and that plaintiff had done nothing to interfere with the rights of defendants for which an action would lie by them against plaintiff.

Plaintiff took this writ of error in due course to review the adverse ruling, after the usual motion and exceptions.

1. A preliminary question is suggested by the record, namely, whether or not the case is subject to the jurisdiction of this court under the constitution. Counsel have not broached that issue, and we regret that we are not to have their aid in attempting to solve it. But, as our learned chief has forcibly remarked in consultation, "the question raises itself." And we think it can not properly be passed over; certainly not

in view of the apparently conflicting judgments bearing upon the general subject involved.

Both of the courts of appeals, since the partition of final appellate jurisdiction, have at various times passed on the merits of statutory actions to quiet title, evidently supposing that they had full jurisdiction of those proceedings. *Murphy v. DeFrance* (1886) 23 Mo. App. 337; *Burt v. Warren* (1888) 30 Mo. App. 332; *Apperson v. Allen* (1890) 42 Mo. App. 537; *Northcutt v. Eager* (1892) 51 Mo. App. 218; *Cook v. Von Phul* (1893) 55 Mo. App. 487; *McGrath v. Mitchell* (1894) 56 Mo. App. 626; *Root v. Mead* (1894), 58 Mo. App. 477.

As the St. Louis appellate court has declared that it now follows the practice of transferring to the supreme court all cases "where there is the slightest question" of its power to decide (*Miller Grain, etc., Co. v. Railroad* (1895) 61 Mo. App. 295), we may infer that that court, at least as now constituted, entertains no doubt of its jurisdiction over cases such as that at bar.

On the other hand, the supreme court, since the division of final jurisdiction by the constitution, has likewise entertained and determined several of such cases, assuming (without discussion) the power to do so. Those decisions will be mentioned in the course of this opinion.

It plainly seems desirable to quiet the title of some appellate tribunal to this class of litigation, for the present, at least.

If these actions fall to the lot of the supreme court it must ordinarily be because they involve title to real estate. Const., 1875, art. 6, sec. 12. If they are not cases of that sort, then their last forum is one of the courts of appeals, barring exceptional instances where special questions may be raised calling for action by the supreme court, or where such action may be

invoked in consequence of some decision of the court of appeals (as pointed out by section 6 of the amendment of 1884). R. S. 1889, p. 88, sec. 6.

In the case in hand the petition contains an allegation that the real property is worth $6,000. Possibly that allegation was inserted upon the supposition that it raised an issue involving a dispute for that amount. But it is clear that the value of the property could be considered as raising such an issue only in event the property, or its title, was involved, and in that case the jurisdiction of the supreme court would attach, irrespective of the value of the property. If, however, neither the land nor its title is involved, it is immaterial to the present inquiry what its value may be.

The real question is whether the case involves title to realty, within the meaning of the constitution. As that instrument now stands, the duty to decide that question devolves upon us. We must perform it according to our best judgment. With all proper respect due to our learned brethren of the courts of appeals, we are not bound to accept the rulings of either of those courts as final in defining the general lines of its jurisdiction; nor are we, as yet, at liberty to hold its decision "conclusive as to its own jurisdiction in the particular case."

We are, for the present, in duty bound to express our own views of the correctness of rulings of the courts of appeals on questions affecting the jurisdiction of those courts or of this court, when properly invoked to do so.

2. This action to quiet title is based upon positive law, the terms of which will be quoted further on.

It has been said in several decisions that the proceeding "is not for the purpose of settling the title to the premises in the first instance." *Von Phul v. Penn*

(1861) 31 Mo. 334; *Rutherford v. Ullman* (1868), 42 Mo. 216; *Dyer v. Baumeister* (1885) 87 Mo. 134.

But the context appearing with that remark shows that the latter was not intended as a ruling on the question now before us. The remark was made to fortify the assertion that actual possession is necessary to maintain the action, and as part of a ruling that the court would not try the issue of title to discover who was in possession (or entitled to be considered constructively in possession) for the purpose of sustaining the statutory action.

The effect of the judgment which the petition seeks in this proceeding, as declared by the very language of the statute, is to forever debar and estop defendant from having or claiming any right or title adverse to plaintiff, unless defendant brings and prosecutes his action to try the title as ordered.

It has been directly ruled that the effect of such a judgment is to bar defendant from any subsequent claim to the premises. *Rees v. McDaniel* (1893) 115 Mo. 145 (21 S. W. Rep. 913).

Should defendant bring suit, in compliance with the order of court under the statute, the original proceeding is not to be regarded as ended until that suit to try title is prosecuted to a judgment. If the defendant of the first proceeding abandons his suit, a judgment barring any claim by him may then be entered in the first action, according to this law.

The very object of the case, as its name imports, is to quiet title. The mode of accomplishing that object is to require defendant to bring (and prosecute to a finish) a suit to test his claim (if he makes a claim), or to put a quietus on his pretension thereafter of any such claim of title. The ultimate design of the proceeding is to have the plaintiff's title settled, one

way or the other, as to any present claim (whether legal or equitable) of the defendant.

It appears quite evident that, on principle, the proceeding involves title, inasmuch as the judgment sought has so direct a bearing on the rights of the parties to the land itself, from the time the judgment is pronounced.

We further hold that that conclusion is clearly deducible from former adjudications.

*Campbell v. Allen* (1876) 61 Mo. 581 was an action of the precise kind under discussion. From the record it appears to have been submitted for decision, January 19, 1876. It had been appealed from the St. Louis circuit court, June 27, 1874, and was pending in the supreme court when the constitution of 1875 was adopted. The fact that it was not certified to the St. Louis court of appeals with the cases, coming "within the final appellate jurisdiction" of that court, under section 19 of article 6 of the constitution, is a very strong implied ruling that the case involved title to real estate. It could properly remain in the supreme court only on that ground.

We find in the early appeal reports no case of this nature appearing to have been transferred from the supreme court to the St. Louis court of appeals at the organization of the latter court. The first reported case there to quiet title that we have discovered is a statutory action, *Walser v. St. Louis* (1876) 2 Mo. App. 600, which was taken by appeal later to the supreme court. It was there dismissed, in an unpublished memorandum opinion (1878) for failure to comply with the practice rules. That case, as appears from its record, was appealed from the St. Louis circuit court in general term to the court of appeals, November 22, 1875. It was filed in the latter court, December 18,

1875.   It was decided, June 19, 1876, and an appeal was allowed to the supreme court, July 3, 1876.

At that epoch of its history it was the practice of the court of appeals not to allow appeals in cases wherein its decision was regarded by the court as final. *Skrainka v. Allen* (June 10, 1876) 2 Mo. App. 387; *State ex rel. v. Court of Appeals* (1877) 67 Mo. 199.

The allowance of appeal in the *Walser* case has, therefore, a significant bearing on the question now in hand.   It indicates the view of the first court of appeals upon it.

On a casual glance it might appear that the *Walser* suit would properly reach the supreme court on an independent ground, namely, that the city of St. Louis was a party.

Cases in which St. Louis is a party now come within the appellate jurisdiction of the supreme court because that city is a "political subdivision of the state."   Const. 1875, art. 6, sec. 12.   *St. Louis v. Robinson* (1893) 55 Mo. App. 256.   At the time the court of appeals allowed the appeal (July, 1876) in the *Walser* case, the city of St. Louis had not yet been separated from the county.   The scheme and charter which (under the constitution) accomplished that separation were not submitted to the people until August 22, 1876.   As a mere city within a county, St. Louis was not such a party as might bring a case by appeal to the supreme court from the court of appeals under the constitution of 1875.   *Kansas City v. Neal* (1894) 122 Mo. 232 (26 S. W. Rep. 695).

The *Walser* appeal is hence the same sort of inferential ruling, and to the same effect, as *Campbell v. Allen*, already mentioned.

*Dyer v. Baumeister* (1885) 87 Mo. 134 was another action of the same kind. It came through the St. Louis court of appeals (14 Mo. App. 575), and was decided

upon its merits in the supreme court.    It was said in
the opinion then given that the action to quiet title is
not of itself a substitute for ejectment, and that the
title is not involved.    But it is obvious, from the fact
that the court adjudicated the whole case, that those
remarks were only meant to emphasize the proposition
that the title was not to be determined in the preliminary
suit for the purpose of ascertaining who was in posses-
sion of the land.

Moreover, though the question of jurisdiction was
not discussed in the opinion, it was raised in the brief
(yet on file) by Mr. Frederick A. Cline for respondent,
who asserted want of jurisdiction in the court as a bar
to any inquiry into the merits. The decision, therefore,
we think, implies very positively that the court
considered it had jurisdiction in that class of cases.

Implied rulings to like effect are found in the results
reached in *Colline, etc., Ass'n v. Johnson* (1894) 120
Mo. 299 (25 S. W. Rep. 190), and *Daudt v. Keen* (1894)
124 Mo. 105 (27 S. W. Rep. 361).

We conclude both on principle and from authority
that actions to quiet title involve title to real estate, and
hence come within the final reviewing power of the
supreme court.    Any rulings of contrary import in the
courts of appeals can not therefore be accepted as
authority on that subject, at this time.

3.    Plaintiff maintains that defendants should have
been required on the admitted facts to bring their suit.
She concedes, however, that the construction of section
2092 proposed by her counsel is at variance with that
heretofore put upon the same language in *Webb v.
Donaldson* (1875) 60 Mo. 394.    She seeks now to
obtain a broader remedial interpretation of the law
in question than was applied to it in that decision.

The section to be construed has been in part the
law of Missouri since the revision of 1855.    R. S. 1855,

p. 1241, sec. 62.    The original enactment here was a substantial copy of a section of the Massachusetts practice act of 1851, with a few verbal changes.    It has been amended in this state twice since 1855.   R. S. 1879, sec. 3562; R. S. 1889, sec. 2092.

We present a copy of the section as it now reads, indicating by roman type the matter originally transplanted from the Massachusetts law (Acts, Mass., 1851, ch. 233, sec. 66), by small capitals the alterations introduced by the Missouri revision of 1855, and by italics the amendments since then.    The italicized matter following the asterisk became the law with the revision of 1879, and the passages in parentheses were enacted in 1889.    (The printed revision of 1879, p. 609, showed by mistake the word "removed" in section 3562 instead of "renewed," which is the word in the enrolled official copy.)

Barring some slight variations in punctuation, this exhibit shows at a glance the changes in the section since it first appeared on our statute book.

Sec. 2092.    *Suits to quiet title.*—"Any person in possession of real property, claiming an estate of freehold, or an unexpired term of not less than ten years, may file a petition in the CIRCUIT COURT, setting forth his estate, whether of inheritance, for life, or years, and describing the premises, and averring that he is credibly informed and believes that the DEFENDANT makes some claim adverse to the estate of the petitioner, and praying that he may be summoned to show cause why he should not bring an action to try the alleged title, if any, and thereupon the court shall order notice to be given to the DEFENDANT; and upon return of such order of notice duly executed, if the DEFENDANT so summoned shall make default, or having appeared, shall disobey the lawful order of the court to bring an action and try

the title, (or *having brought an action in obedience to said order, shall fail to prosecute the same with effect, and*) the court (*before whom the same is tried be of the opinion that such person has no valid right in law or equity, it*) shall enter a JUDGMENT that he be forever debarred and estopped from having or claiming any right or title adverse to the petitioner, AND THOSE CLAIMING BY OR THROUGH HIM, to the premises described.* *If any person who shall be proceeded against under the provisions of this section shall be a nonresident of this state, the fact of nonresidence shall be alleged in the petition or in an affidavit filed in the court, and the order of notice made by the court shall be returnable to the first day of the next regular term of the court making such order, and may be renewed from time to time as occasion may require; and all orders made under the provisions of this section against nonresidents of this state shall be served by delivering a duly exemplified copy thereof to such nonresident at any place within or without this state, by any person above the age of twenty-one years not incompetent to testify as a witness in the cause, and being proved by the affidavit or deposition of such person, such service shall be as effectual as if made by a duly authorized officer in this state upon a resident thereof.*"

Under this section plaintiff argues that one in possession of property claiming the fee may compel a suit to try title by another person out of possession, and claiming only a remainder after a life estate conceded to plaintiff, without any further showing. This contention has been presented with much force of reasoning, and if the question were a new one the argument for that interpretation would command serious consideration.

But it will be seen from the text of the law above given that no change in it has occurred which can fairly be held to modify the ruling in *Webb v. Donald-*

*son*, in the sixtieth report, to the effect that one claiming only a remainder, after the life estate of plaintiff in possession, can not be required under that section to bring an action to try title.

Since that reading of the statute was adopted in 1875 by the supreme court, the same terms have been re-enacted in the revisions of 1879 and of 1889. Changes in the section have been made in other particulars, but none to alter the force or applicability of the decision in the *Webb* case as to the point of present controversy.

As that decision was publicly and generally known through the official court reports long before the revision of 1879, the effect of re-enacting the language was to embody in the later enactment the construction which had been judicially placed upon it, if the language is fairly open to construction at all. Had the lawmakers disapproved of the meaning given to their work by the court, it would have been easy to make their true intent clear when the terms of the law were going through the process of revision. As no change in those terms was made, we should assume that the legislature accepted as correct the interpretation the court had announced.

Therefore, whatever might be our personal views of the proper scope and intent of the section construed in *Webb v. Donaldson*, we consider that, in the existing state of the statutory law, the judgment in that case should be adhered to, and that an adverse claim of title to a remainder, which does not conflict with the possession, or right to possession, of the plaintiff can not be required to be litigated by a defendant under the terms of the existing statute (section 2092) to quiet title.

If it is thought desirable to enlarge the remedial operation of the statute, so as to reach such facts as

those of the pending suit, the legislative department of government is the one to take the initiative in that direction.

4. The same conclusion reached in the *Webb* case was announced on a similar state of facts in Massachusetts in *Tisdale v. Brabrook* (1869) 102 Mass. 374, afterwards approvingly cited in *Boston Mfg. Co. v. Burgin* (1874) 114 Mass. 341. The two decisions last mentioned occurred long after we had adopted the Massachusetts statute, and hence are only of argumentative weight. But they tend to strengthen the force of the Missouri decision to the same effect.

5. It was held in *Benoist v. Murrin* (1871) 47 Mo. 537, that the adverse claim (which must be brought to suit if demanded by a plaintiff in possession) need not be of such a nature as would support ejectment. And in the *Colline, etc., Ass'n's* case (1894) 120 Mo. 299, it was ruled that the remarks in *Webb v. Donaldson* and in *Dyer v. Baumeister* intimating that ejectment was the only action to be considered, in determining whether defendant had a claim to sue upon, were unnecessary to the judgments in those cases, and placed too narrow a limit on this sort of action.

In the *Colline, etc., Ass'n* case, as well as in *Bredell v. Alexander* (1879) 8 Mo. App. 110, it was held, in consonance with the ruling in *Benoist v. Murrin,* that any adverse claim, whether legal or equitable, that might be presently asserted by suit against one in possession might also be foreclosed by the statutory proceeding to quiet title. But none of these cases holds that a person merely claiming a remainder may be required to bring suit against a life tenant whose right to possession defendant concedes, and especially where (as in the case at bar—to the facts of which our rulings must be considered limited) defendant disclaims any

present right of action against the life tenant in possession.

In view of the precedents on the subject, and of the force that some of them have acquired as part of the existing statute itself we conclude that the learned trial judge was entirely right in refusing to require defendants to bring suit to try the title.

The judgment is affirmed. BRACE, C. J., and MACFARLANE and ROBINSON, JJ., concur.